## INTENDANT AND TOWN COUNCIL OF LIVINGSTON vs. PIPPIN.

[ACTION AGAINST MUNICIPAL CORPORATION ON SPECIAL CONTRACT.]

1. *Powers of corporate authorities of Livingston to procure water.*—The corporate authorities of the town of Livingston, under their charter and the act amendatory thereof, (Session Acts 1834-5, p. 133; *Ib.* 1839-40, p. 123,) have power to procure a supply of water on the public square of the town, and are themselves the judges of the mode and manner best calculated to accomplish that object.

2. *What defenses corporation may set up in avoidance of contract.*—In an action against a municipal corporation, to recover the price agreed to be paid for the boring of an artesian well, the defense cannot be set up that, though the corporate authorities had power to contract for the procuring of a supply of water on the public square of the town, they ought to have adopted some less expensive means of procuring it.

3. *Joinder of causes of action, and assignment of breaches.*—In an action on a special contract, to recover the agreed price for work done, it is not necessary to assign a special breach; and if such breach be assigned, the common counts may nevertheless be added.—Code, § 2235.

4. *Plea must go as far as it professes.*—A plea which, while professing to answer the whole action, answers a part only, is fatally defective on demurrer.

APPEAL from the Circuit Court of Sumter.

Tried before the Hon. JOHN E. MOORE.

THIS action was brought by Littleberry Pippin, against the appellants, and was founded on the defendants' breach of a contract, which, as set out in the first count of the complaint, was in these words:

"This agreement, made and entered into by and between the intendant and town council of the town of Livingston, of the one part, and Littleberry Pippin, of the other part, witnesseth, that the said corporation has this day hired of the said Pippin his negro boy Hardy, for the purpose of boring, within the corporate limits of said town, a well, commonly called an artesian well; which said boy the said Pippin guaranties to be competent and skillful in the prosecution of works of that kind. The said corporation agrees to pay said Pippin, for the services of said boy, at the rate of $100 per month, payable monthly, and to furnish him with food and lodging only; reserving the right to dismiss said boy from their employment at the expiration of any month, and to make deduction for sickness or absence of said boy. The said Pippin, on his part, agrees to furnish all the tools, implements and apparatus that are or may be necessary for the boring and completion of said well; but the said corporation agrees to keep the tools and implements in good order and repair for the prosecution of said work.

"Signed in behalf of the intendant and town council of the town of Livingston, this 13th December, 1854.

"H. H. HARRIS, Int."

The first count in the complaint was as follows:

"The plaintiff claims of the intendant and town council of Livingston, viz.," (setting out their names,) " $3,500, due by account on the 1st day of April, 1857, for work and labor done under the following contract, entered into by him with the said corporation, to-wit: (setting out the contract above copied.) "And plaintiff avers, that he has rendered work and labor in full compliance with his part of said contract, to-wit, from the 13th December, 1854, to the 1st April, 1857; but that said defendants have

failed to perform their part of said contract, and, although often requested, have failed and refused to pay plaintiff the said $100 per month, payable monthly, or any part thereof; to the damage of plaintiff of said sum of $3,500, with interest thereon. Wherefore he brings this suit."

The other counts were, substantially, as follows: The second claimed "the further sum of $3,500, due the 1st April, 1857, for work and labor before that time done by plaintiff, for said corporation, and at its special instance and request, with interest thereon." The third claimed "the further sum of $3,500, due on the 1st April, 1857, for the hire of negro man Hardy, belonging to plaintiff, from the 13th December, 1854, to the 1st April, 1857, at the rate of $100 per mouth, payable monthly, at the special instance and request of said corporation, with interest thereon." The fourth claimed "the further sum of $3,500, due on the 1st April, 1857, for the hire of negro man Hardy from the 13th December, 1854, to the 1st April, 1857, with interest thereon." The fifth claimed "the further sum of $3,500, due on the 1st April, 1857, for work and labor done, and materials furnished for the same by plaintiff, for said corporation, and at its instance and request, from the 13th December, 1854, to the 1st April, 1857, at the rate of $100 per month, payable monthly, with interest thereon."

The defendants demurred to the entire complaint, on the ground that there was a misjoinder of counts, in uniting a count on a contract requiring a special breach with counts on contracts which did not require such special breach; and to the first count separately, on the following grounds: 1st, "because plaintiff sues to recover the amount due by contract for work and labor done, when he avers that it was done under a special contract;" 2d, "because plaintiff predicates his right to recover on a special contract, but does not aver or show that the contract was ever made, signed or executed by the defendant, or any one authorized to execute the same on its behalf;" 3d, "because plaintiff does not show that the contract set out is the contract of the defendant;" 4th, "because plaintiff does not aver or show that the defendant is a

corporation capable of making a contract, or of suing or being sued;" 5th, "because the contract set out in said first count shows on its face that it is not such a contract as the defendant, under its charter, is competent, or has the legal authority, capacity, or power to make;" and, 6th, "because there is no sufficient averment in the complaint that plaintiff has performed his part of said agreement."

The court overruled these demurrers, and the defendants then filed eight pleas, of which it is only necessary to notice the 4th, 6th, 7th, and 8th, which were in these words:

"4. And for further plea in this behalf, said defendants say, that said plaintiff, during two months of the time for which he claims compensation from the defendants for the services of his negro boy Hardy, at the rate of $100 per month, interfered with said boy Hardy, in the prosecution of said work, and took him under his (plaintiff's) own management and control; and so unskillfully prosecuted, managed, conducted and controlled said work, for and during the time of said two months, that no progress whatever was made therein, and the whole of said two months was entirely lost to defendants.

"6. And for further plea in this behalf, defendants say that plaintiff ought not to have or maintain his aforesaid action against them, because they say, that they are a body corporate, by an act of the general assembly of the State of Alabama, approved on the 10th January, 1835, which said act of incorporation is in the words and figures following," (the act referred to is not set out;) "and by an act to repeal in part the said act of incorporation, approved on the 31st January, 1840, in the words and figures following," (the act is omitted;) "by which said acts of the general assembly the said defendants were created a body corporate with limited and defined powers and jurisdiction. And the defendants aver, that the contract, alleged by the plaintiff to have been entered into by and between him and said defendants, was for boring an artesian well upon the public square in the town of Livingston; and that the work and labor, for which com-

pensation is claimed in all the counts of plaintiff's complaint, is work and labor alleged by said plaintiff to have been done by him on said artesian well; and that said well was not necessary for the security and welfare of the inhabitants of said town, or for preserving the health, peace, order or good government within said town. And said defendants say, that the said corporation, so created as aforesaid, is in no way, by either of said acts of the general assembly, authorized or empowered to enter into any contract with said plaintiff, for the boring of an artesian well on said public square, as said plaintiff, in his said complaint, has alleged against them; and so said defendants say, that the said contract, not being authorized by their charter of incorporation, is of no force or effect whatever against them, and this they are ready to verify."

The 7th plea, after alleging the incorporation of the defendants as a body corporate, as in the 6th plea, proceeded as follows: " And defendants aver, that said corporation, so created as aforesaid, is in no way authorized or empowered, by either of said acts of the general assembly, to enter into any such contract with said plaintiff, for any such purpose as said plaintiff, in his said complaint, hath alleged against them; and so said defendants say, that the said contract, not being authorized by their charter of incorporation, is of no force or effect whatever against them," &c.

The 8th plea averred, " that the work and labor, specified in plaintiff's said complaint, was to be performed under a contract between plaintiff and said defendants, for the boring of an artesian well on the public square of said town; and that the same was an entire contract; and that the plaintiff abandoned said contract before the completion of said well, without the consent of said defendants, whereby said well became wholly valueless to said defendants."

The plaintiff demurred to these pleas, on the following grounds: to the 4th, " because it is only a plea in mitigation of damages," " because it does not present any bar to the action," " because it does not begin or conclude

as a plea in bar," and " because it sets up a cause of action against the plaintiff which cannot be set off, nor the damages recouped in this action;" to the 6th and 7th, " because neither presents any bar to the action," " because neither shows any want of authority to make the contract declared on," " because each shows a state of facts which the defendant is estopped from pleading," " because each alleges a state of facts which contradicts or varies the written contract declared on," and " because each, in effect, denies the execution of the contract declared on, and is not sworn to;" and to the 8th, " because it does not present any bar to the action, although it purports to be a plea in bar," " because it is double," " because it is only a plea in mitigation of damages," and " because it contradicts the written contract declared on." Each of these demurrers was sustained.

The rulings of the court on the pleadings are now assigned as error.

S. F. HALE, for appellants.—1. The demurrer to the entire complaint should have been sustained, on account of the misjoinder of counts. The contract declared on required a special breach, and, consequently, could not be joined with the common counts.—Code, § 2235.

2. The demurrer to the first count, and to the 6th and 7th pleas, presents the question, whether the corporate authorities of the town had power to make a contract for the boring of an artesian well on the public square. A corporation has only such powers as are expressly given by its charter, and such as are necessary to carry those express powers into effect; and can make no contract which is not within the scope of these powers.—Ex parte Burnett, 30 Ala. 461; 13 Mass. 272; 13 Peters, 519, 587; Angell & Ames on Corporations, 200; 1 Stewart, 306; 1 McLean, 41. Neither the original charter, nor the act amendatory thereof, gives the power which has been exercised. The latter act, on the contrary, only authorizes the levy of a tax sufficient to defray the " ordinary expenses " of the corporation. The boring of an artesian well cannot be considered a part of the "ordinary

expenses " of a little municipal town. It would be preposterous to allow the existence of a power to make such contract, when the corporation has no power to levy a tax to meet the indebtedness thereby incurred.

3. The corporation is not estopped from setting up its own want of authority, in avoidance of the contract. 8 Gill & J. 285; 1 Maryland Ch. Dec. 413, 550; 5 Conn. 561; 2 Cranch, 168; 4 Ala. 558; 2 Denio, 110; 7 Wend. 34.

4. The party who violates an entire contract cannot recover, either on the contract itself, or for work and labor done. The 8th plea was, therefore, good.

A. A. COLEMAN, and TURNER REAVIS, *contra.*—1. There was no misjoinder of counts. The special contract, having been executed by plaintiff, required no special assignment of a breach in the non-payment of the money. Sprague v. Morgan, 7 Ala. 592.

2. The 7th section of the charter of the town of Livingston gives the corporate authorities implied (if not express) power to furnish the inhabitants with a supply of water.—7 Ohio, 354; 11 Missouri, 61; 5 Jacob's Law Dictionary, p. 187, tit. *Police.*

3. The contract having been executed by plaintiff, the defendants cannot set up its invalidity, after having received its benefits.—7 Ohio, 354; 2 Harr. (Penn. St.) R. 83; 16 Mass. 102; 1 Rich. (S. C.) R. 281.

4. The 4th plea is bad, because (aside from other reasons) it professes to answer the whole action, while it answers only a part.—17 Ala. 109; 19 Ala. 734; 27 Ala. 208; 27 Ala. 562; 29 Ala. 668; 13 Wend. 78; 20 Johns. 204.

STONE, J.—The provisions of the act incorporating the town of Livingston, which confer on the intendant and council their chief powers—those which bear on the questions presented by this record—are found in section 7 of that act, and are as follows:

" Section 7. The intendant and council shall have power to pass all such orders, by-laws and ordinances, respecting the street or streets, market-buildings, pleasure

carriages, wagons, carts, drays and *police of said town,* that shall be necessary for the *security and welfare of the inhabitants thereof,* and for *preserving health, peace,* order and good government within the said town; and to assess a tax on the inhabitants thereof, not exceeding one third the amount of the State tax which is paid for property of the same kind; * * * * to affix fines against persons violating their by-laws or ordinances, not exceeding twenty dollars for each offense; * * * to assess a tax on licenses to retailers of spirituous liquors, and billiard-tables kept for use in said town, not exceeding on the former ten dollars, and on the latter fifty dollars in any one year."—Pamph. Acts 1834–5, p. 133.

There was an amendment of this act of incorporation, approved January 31, 1840, which declares, that " so much of the above recited act, as fixes the amount of taxes to be raised at one third the State tax, be, and the same is hereby, repealed." This act further provided, " That the intendant and council shall have power to lay and collect a tax on real estate, negroes and other property, sufficient to defray the ordinary expenses of said corporation : *Provided,* they shall, in no one year, lay and collect more than three times the amount of the now county tax, together with such poll tax as the intendant and council may deem proper."—Pamph. Acts 1839–40, p. 123.

It is contended that the act of 1840 is restrictive of the powers conferred by the original act of incorporation; that, conceding the corporate authorities, under the former act, had power to sink an artesian well, yet the latter statute takes away that power; that it can not be supposed the legislature contemplated that the intendant and council should incur a debt, which, under their power to levy taxes, they could not pay; that they have no authority to levy taxes, except to pay the *ordinary expenses* of said corporation; and that the expenses of an artesian well can not be classed as ordinary.

The solution of this question depends on the proper construction of the words, " ordinary expenses."

It is well settled, that corporations, which owe their

existence to the act of the legislature which called them into being, can only exercise the *powers which are expressly granted* to them, such *implied powers* as are necessary and proper to carry into effect the powers expressly granted, and such *incidental powers* as pertain to the purposes for which the corporation was created.—See Central Plank Road Co. v. Mayor and Aldermen of the City of Montgomery, at last term; *Ex parte* Burnett, 30 Ala. 461; Angell & Ames on Corp. (5th ed.) §§ 110, 111, 112.

These implied and incidental powers are unwritten, and vary with the varying objects of the corporation. They may be, and frequently are, abridged and restricted by the express language of the act of incorporation; and, when so abridged or restricted, the positive language prevails over the implications and incidents.

Ordinary expenses are the expenditures which are necessary to carry into effect the ordinary powers of the corporation. These terms are used in contradistinction to *extraordinary expenses*, which would be a necessary means of carrying into effect *extraordinary powers*. Under the rule above laid down, the implied and incidental powers of corporations must be classed as ordinary powers, because they pertain to all corporations, unless they are taken away by legislation. Under the same rule, it is only powers expressly granted that can properly be styled extraordinary; and hence, extraordinary expenses are those which are incurred in carrying into effect *express* and *extraordinary powers*. These principles result necessarily from the rules universally observed in construing the powers of corporations.

Looking into the act incorporating the intendant and council of the town of Livingston, we find no express grant of power which can properly be classed as extraordinary. Hence we hold, that the words "ordinary expenses," found in the act of 1840, have no field to operate on, and are simply supererogatory.

The intendant and council of the town of Livingston have the ordinary public powers which are conferred on municipal corporations. The express grants of power are copied in the opening of this opinion. Nothing is more

important, as a sanitary and police regulation, than an abundant supply of water. Its uses are too well known to require notice here. We hold, that the corporate authorities had the power, as such, to procure water on the public square of the town of Livingston.

If it be contended, that the intendant and council should not have incurred the expense of an artesian well, but should have contented themselves with the cheaper modes of accomplishing the object, we answer, that this question can not be raised in this form. The corporate authorities, having the power to procure the supply of water, were themselves the judges of the *mode* and *manner* best calculated to accomplish that object.—[Lawless v. Reese, 4 Bibb 307.] The propriety of their election, and the binding efficacy of their contract, can not be questioned collaterally. If their proposed expenditure was an abuse of their powers, any of the corporators had an ample remedy by injunction.—See Christopher v. Mayor of New York, 13 Barb. Sup. Ct. 567, and authorities cited. It needs no argument to vindicate the superior claims of this mode of redress, over the defense attempted in this case. See authorities cited in Smith v. Prattville Manufacturing Co., at last term.

It is contended, that the defendant's demurrer should have been sustained, because there is a misjoinder of counts in the complaint. This objection rests on section 2235 of the Code, which declares, " that a contract upon which it is necessary to assign a special breach can not be united in the same complaint with a contract on which no such breach is necessary." We think it a full and sufficient answer to this objection, that a suit on this contract, to recover for work and labor done under it, not only does not require a special breach, but in fact does not require a special count. When a contract, though special, is executed by one party, and nothing remains to be done but a payment of money, a recovery may be had on the common counts.—See Vincent v. Rogers, at last term, and authorities cited.

It is further objected, that the complaint does not aver that the contract declared on was executed by any person

or persons authorized to bind the corporation. We do not think this objection is sustained by the record.

The demurrer to the fourth plea was properly sustained, because that plea assumed to answer the whole complaint, when, in fact, it answered but a part of it.—Standefer v. White, 9 Ala. 527.

The other questions presented by this record are believed to be covered by the principles of this opinion.

There is no error in the record, and the judgment of the circuit court is affirmed.