## ROUNDTREE *vs.* BRANTLEY.

[ACTION TO RECOVER DAMAGES FOR OVERFLOWING LAND.]

1. *Prescriptive easement.*—In an action to recover damages for overflowing plaintiff's lands by the formation of a sand-bank in a stream, caused by an accumulation of the sand which was washed down into the stream through

Roundtree v. Brantley.

a ditch dug by defendant, a plea, averring that the ditch had been dug and used by the defendant for a period of ten or twenty years, presents no defense; for, although a right to an easement on another's lands may be acquired by adverse enjoyment, for the period which, under the statute of limitations, bars a right of entry on land; yet the presumed right is never allowed an extent beyond the adverse user, and the mere use of the ditch for ten or twenty years does not show any consequential injury to the plaintiff's lands for the same length of time.

2. *Limitation of actions for injuries to lands.*—An action to recover damages for overflowing lands is barred within one year; such action being governed by the 6th subdivision of section 2481 of the Code, and not by the first subdivision of section 2477.

APPEAL from the Circuit Court of Dallas.

Heard before the Hon. NAT. COOK.

The complaint in this case, as amended, was as follows:

"Joseph J. Roundtree   The plaintiff claims of the de-
          *vs.*        fendant $25,000 damages, for
John Brantley.         this: That said plaintiff, on the
— day of ——, was possessed of a certain close, lying and being in said county of Dallas; and while plaintiff was so possessed, the said defendant, on the — day of ——, cut a certain ditch, by which the waters from adjacent and circumjacent lands were turned into and across a certain stream or creek in said county, called 'Blue Gut,' and by said waters running into and across said creek, the sand was washed into the bed of said creek, and formed across and in the bed of said creek a mole or dam, by which the waters of said creek were obstructed from their usual and natural channel, and dammed up, and rolled back upon and overflowed plaintiff's lands, for a long space of time, to-wit, for the period of six years before the commencement of this suit; whereby plaintiff's crops were greatly damaged, and great loss resulted to him from such overflow in his crops, in the years 1852, 1853, 1854, 1855, 1856, and 1857, to the amount of twenty-five thousand dollars.

"2. Plaintiff claims of defendant, also, other twenty-five thousand dollars, for this: That said plaintiff, on the — day ——, 1857, and for a long time before that time, had been possessed of certain lands and a plantation, lying and being in said county, and while so possessed, the

said defendant opened up and widened a certain ditch upon lands lying around and near to said lands of said plaintiff, and thereby turned the waters into and across the channel of a certain creek in said county, called 'Blue Gut,' whereby the sand was washed into and across the bed of said creek, and heaped up and accumulated from time to time, until they formed a mole or dam in the bed of said creek, by which the waters of said creek were obstructed, and dammed up in the usual and natural channel of said creek, and turned back upon and overflowed plaintiff's aforesaid lands, and by which great loss resulted to plaintiff's crops in each year, from the year 1852 down to the present time; whereby he is damaged to the amount of twenty-five thousand dollars.

" 3. Plaintiff claims of defendant other twenty-five thousand dollars, for this: That plaintiff, on the — day of ——, was seized and possessed, as of his own right, of a large and valuable tract of land and plantation, which, before the trespasses hereinafter mentioned, was not subject to overflow, and was of great value, to-wit," &c.; " and the said defendant, on the — day of ——, opened and widened a certain ditch upon lands near to and round about the lands of plaintiff, by which said ditch the waters were led to flow into and across a certain creek in said county, called 'Blue Gut,' and, in flowing into and across said creek, the waters washed in the sands, and accumulated them in the channel of said creek, until they have formed a dam or mole, by which the waters of said creek are dammed up, and obstructed, and thrown back upon plaintiff's lands, and have been frequently and for a long time overflowed and made subject to overflow; and by which large quantities of decayed and decaying vegetable matter are thrown back upon plaintiff's lands; by means whereof, said lands are rendered dangerous to live upon, or to cultivate, on account of sickness produced by the same; and by which also said lands are rendered unfit for cultivation, and greatly diminished in value; to plaintiff's damage twenty-five thousand dollars.

" 4. Plaintiff claims of defendant other twenty-five thousand dollars, for this: That plaintiff was heretofore,

to-wit, on the — day of ——, seized and possessed, as of his own right, of a large and valuable tract of land and plantation, of the value of twenty-five thousand dollars, in the county aforesaid ; and the said defendant cut and opened a certain ditch, upon lands near to and round about plaintiff's said lands, by and through which the waters were led to flow into and across a certain creek, called 'Blue Gut,' and by the flowing in of said waters the sands were washed into and across said creek, and accumulated and heaped up, until they formed a dam or mole in and across the bed or channel of said creek, by which the waters of said creek were obstructed, and turned back upon and overflowed plaintiff's lands and plantation aforesaid; whereby great damage was done to plaintiff, in the loss of his crops, and in the loss of the use of timber upon said lands, and in the depreciation of the value of said lands, and in sickness produced by such overflows in plaintiff's family, and among his negroes, from the year 1852 to the 'present. time; for which said several injuries plaintiff claims of defendant twenty-five thousand dollars damages aforesaid.

"5. Plaintiff claims of defendant other twenty-five thousand dollars damages, for this: That the plaintiff was, before and at the time of committing the several trespasses by the defendant hereinafter mentioned, and from thence hitherto has been, and still is, seized and lawfully possessed in his own right of a large and valuable tract of land, situated in said county of Dallas, and of the value of twenty-five thousand dollars, a large portion of which then was, and has since continued to be, cleared up and used for the purposes of cultivation ; and the said defendant, on the — day of ——, cut and opened certain ditches upon lands near and opposite to plaintiff's said lands, by means whereof, and through which, waters were led and made to flow into a certain creek, called 'Blue Gut,' contrary to their natural course, and in volumes much greater and larger than were wont to empty and flow into said creek, and whereby the amount of water in said creek was greatly increased and swollen ; and said defendant cut and opened certain other ditches, below

and near to the plaintiff's said lands, by and through which the waters were made to flow and empty into said creek, below plaintiff's said lands, and thereby greatly increased the water in said creek, beyond the amount which naturally flowed therein ; and said defendant also continued and opened and widened a certain other ditch, below the ditches hereinabove referred to, by which the waters of a certain branch were led to flow and continued to be flowed into and across said creek, below the places where the ditches before referred to emptied their waters into said creek ; and by the flowing in of said waters, the sands were washed into and across said creek, and heaped up and accumulated, until they formed a dam or mole in and across the bed or channel of said creek, and the said waters were obstructed, and turned back upon and overflowed plaintiff's said lands and plantation ; by means whereof, plaintiff's crops, then growing thereon, were greatly damaged, to-wit, in the years 1852, 1853, 1854, 1855, 1856, and continuously from thence down to the present time, and his said lands have been rendered unfit for cultivation, at, to-wit, in the county aforesaid ; to plaintiff's damage twenty-five thousand dollars.

"6. Plaintiff claims of defendant, also, other twenty-five thousand dollars, as damages for this : That plaintiff was heretofore, to-wit," &c., "in possession, as of his own property, of a large and valuable tract of land and plantation in the county aforesaid, and which was of great value," &c., "and said defendant, on," &c., "cut and opened certain ditches on certain lands near and adjacent to plaintiff's said lands, by means whereof he flowed, and caused to be flowed, into a certain creek, called 'Blue Gut,' near to which plaintiff's said lands lay, a large amount of water, which had not, and otherwise would not have flowed into said creek ; and by means whereof, the waters of said creek were greatly increased, and, in consequence thereof, spread and flowed over plaintiff's said lands and plantation ; whereby plaintiff's crops thereon were greatly damaged, to-wit, in the year 1852, and from thence down to the present time, and his said lands have been and are greatly damaged and deteriorated in

value; for which said injuries, plaintiff claims the sum of twenty-five thousand dollars damages as aforesaid.

"7. Plaintiff claims of defendant, also, other twenty-five thousand dollars, as damages for this: That the plaintiff was possessed, as of his own property, of a large and valuable tract of land and plantation, in the county aforesaid, of the value of twenty-five thousand dollars; and the said defendant, afterwards, to-wit," &c., "widened and continued open certain ditches on other lands, below and near to plaintiff's said lands, whereby a large amount of water was, and has since continued to be, diverted from and out of its natural current and direction, and made to flow and run into and across a certain creek in said county, called 'Blue Gut,' below plaintiff's said lands; and said waters, in flowing into and across said creek, washed and accumulated sand and other substances in said creek, and in the bed thereof, until they formed and continued a mole or dam, by which the waters of said creek were, and continue to be, dammed up and obstructed, and thereby are and have been thrown back upon plaintiff's said lands; and by means whereof plaintiff's said lands are, and have been frequently and for a long time, overflowed and made subject to overflow; and by means of which, plaintiff's crops, grown upon said lands, were, and have continued to be, greatly injured and damaged, and he has been and is excluded from, and deprived of, the use and enjoyment of the said lands, and the same have been and are greatly damaged and lessened in value; to plaintiff's damage twenty-five thousand dollars."

The defendant filed five pleas, the 2d, 3d and 5th of which were as follows:

" 2. For further plea to said several counts in said complaint set forth defendant saith, that as to the said several grievances in said complaint alleged to have been committed by him, in cutting, opening, deepening and widening the said ditch in said complaint mentioned, said plaintiff ought not to have or maintain his aforesaid action thereof against said defendant, because he saith that, at the time of the commission of the said supposed

grievances, said ditch was situated entirely upon the lands of the defendant, without this, that any part of said ditch was upon the lands of the plaintiff; and without this, that said ditch emptied the waters and sands therein flowing upon any part of the lands of the plaintiff. And the plaintiff (?) saith, that said supposed grievances, in said complaint mentioned, were not committed within the period of twenty years next before the commencement of this suit; but that the said defendant, during said period of twenty years, was seized, as of his own demesne in fee, of the lands upon which said ditch was, as set forth in said complaint, and of the lands upon which the water and other substances flowing through said ditch emptied; and during said period of twenty years continuously before this suit was brought, said defendant was accustomed to use and enjoy, and did use and enjoy, the benefits and advantages of said ditch in the drainage of his said lands, through which said ditch was cut, without any let, hindrance or interruption whatever, and at his free will and pleasure; and the defendant saith, that if any mole or dam was created in the creek, called 'Blue Gut,' by the flow of water and sand from said ditch, the same was created by the usual and accustomed flow of water and sand through said ditch for the said period of twenty years as aforesaid, and the injuries mentioned in the complaint are the same injuries which resulted from the creation of said mole or dam in the manner set forth in this plea, and none other; and this he is ready to verify," &c.

"3. The second plea is to be copied, except that ten years is to be inserted instead of twenty years; and this, by consent of counsel, is to stand for and as the third plea."

"5. For further plea in this behalf defendant saith, that the said supposed causes of action, in said complaint mentioned, did not, nor did any or either of them, accrue at any time within one year next before the commencement of this suit, in manner and form as the said plaintiff hath above complained against him; and this he is ready to verify," &c.

The plaintiff demurred to each of these pleas, and as-

signed the following causes of demurrer: to the 2d and 3d pleas, "because neither contains any answer in law to the said several counts in plaintiff's complaint, and the matters and things therein alleged are not sufficient to bar said action; and because each of said pleas is double and argumentative:" and to the 5th plea, "because the matters and things therein alleged are not sufficient in law to bar plaintiff's said action." The court overruled the demurrers; and its action in this respect, to which the plaintiff excepted, and in consequence of which he was compelled to take a nonsuit, is now assigned as error.

ALEX. WHITE, for appellant.

BYRD & MORGAN, *contra*.

A. J. WALKER, C. J.—The gravamen of the complaint is, that the defendant caused a sand-bank to be formed in a creek, by digging a ditch, in which the sand was washed down into the creek, and that the sand-bank thus formed dammed up the water, and caused the inundation of contiguous lands of the plaintiff, a super-riparian proprietor. The subject of complaint is the formation of the sand-bank, and consequential overflow.

The second and third pleas interpose as a defense the length of time which had elapsed since the cutting of the ditch, and that if any dam was created, it resulted from the accustomed flow of water and sand down the ditch into the creek during that time. The defense of these two pleas is the continued use of the ditch for the periods specified, and not the overflow of the plaintiff's lands during those periods. It is a prescriptive right to the ditch, and not an easement to overflow the plaintiff's land by an obstruction of the natural and accustomed flow of the stream. It is altogether consistent with the averments of the pleas, that although the ditch had been cut and used from a time sufficiently remote to precede the commencement of the period of prescription, yet the formation of the sand-bank had been gradually progressing, and did not attain such magnitude as to cause an overflow of the plaintiff's lands until within a very recent period. Thus

the pleas place beyond the period of prescription the act of the defendant, putting in operation the agency which, by a gradual accumulation of its effects, ultimately produced an interference with the plaintiff's rights; but do not show any disturbance of the plaintiff's right, or detriment to him, at a time beyond the period of prescription.

We entertain no doubt that, under the law as now recognized, a right to an easement upon another's land may be acquired by adverse enjoyment for a time corresponding with that which is prescribed in the statute of limitations in reference to the right of entry upon land. Angell on Water-Courses, §§ 208, 209, 223, and note 2, containing extracts from Starkie on Evidence; McArthur v. Carrie's Adm'r, 32 Ala.; Ricard v. Williams, 7 Wheat. Rep. 59.

But the doctrine of prescription, which the defendant invokes, is founded upon the idea of long enjoyment, and continued possession adverse to the plaintiff, which challenges the plaintiff's right, and in which the plaintiff acquiesces, or is presumed to acquiesce; and the right presumed is never allowed an extent beyond the adverse user.—Angell on Water-Courses, §§ 200, 210, 215, 221, 224, 379; Cockrell v. Brown, 33 Ala. 38.

Until the obstruction had been formed in the creek, there was no interference with any right of the plaintiff; there was no enjoyment or possession of his land, and there could be no acquiescence by him in any hostile claim to any thing which was of right his; and to allow the long user of a ditch, to drain the defendant's land, to create a presumption of a right to overflow the plaintiff's lands, would give to the prescription an effect far beyond the user.

The case of Flight v. Thomas, 10 Ad. & El. 590, is, in principle, analogous to this, and seems to decide the very point which the 2d and 3d pleas present. The plaintiff and defendant were occupants of adjoining premises; and the plaintiff alleged, that the defendant on his premises caused noxious smells, which rendered the plaintiff's " uncomfortable, unhealthy, unwholesome, and unfit for

habitation." The defendant pleaded the use of a mixen on his land for twenty years, *which produced noxious smells*, and that the smells complained of were necessarily pro-. duced by it. This plea being traversed, there was a verdict for the defendant. The plea was afterwards held bad, and the plaintiff was allowed to take judgment *non obstante veredicto*. The decision was placed upon the ground, that the plea did not allege a right to make the smell on the plaintiff's premises; that there could be no claim of an easement, unless it was made to appear that the offensive smells had been used for twenty years to go over to the plaintiff's land; and that the plea might be proved, without establishing the right to produce smells upon the plaintiff's land. Now here is a case, where the nuisance was alleged to have been a production of that which was possessed and used for more than twenty 'years; and yet the plea was held faulty, in not showing that the interference with the plaintiff's right had existed during the period of prescription. It seems to cover the precise question now in hand.—Sedgwick on the Measure of Damages, 107.

There is a class of cases, in which parties are allowed to institute suit before any actual injury is done; but it is only when some right of the plaintiff has been infringed. For instance, suit may be brought for the obstruction or diversion of water-courses, in 'infringement of the rights of the plaintiff, even before any actual damage is done; and two reasons are given for the doctrine—that wherever there is a wrong, there must be a remedy, and the plaintiff must at least be entitled to nominal damages; and that otherwise the adverse enjoyment might ripen into a title by lapse of time before there was any actual damage. Angell on Lim. § 300; Whipple v. Cumberland Manf. Co., 2 Story, 664; Bolivar Man. Co. v. Neponset Man. Co., 16 Pick. 241.

This case does not fall within the class above mentioned. The digging of the ditch did not, of itself, interfere with any right of the plaintiff, and gave rise to no cause of action in his favor. It did not at first obstruct the natural and accustomed flow of the stream. There

36

was no infringement of any right of the plaintiff, until the ditch had caused the formation of an obstruction; and consequently the computation of the period of prescription could not commence until that occurred.

Our investigations have not enabled us to find any ground, upon which the sufficiency of the second and third pleas can be sustained; and we must, therefore, decide that the court erred in overruling the demurrer to them.

[2.] The fifth plea simply relies upon the statute of limitations of one year.—Code, § 2481. The plaintiff's cause of action is clearly in trespass on the case. It is a consequential injury done to the plaintiff's right to have a stream, of which he was a riparian proprietor, flow in its natural and accustomed manner, whereby damage was done to his land and crops. It falls within subdivision 6 of section 2481 of the Code, which includes "civil actions for any injury to the person or rights of another, not arising from contract, and not (therein) specifically enumerated." In the article of which that section is a part, there is no other provision, which can include this cause of action. We have been referred to the first subdivision of section 2477, which makes six years the period of limitation to "actions for a trespass to real or personal property." It is argued that trespass is a comprehensive term, which includes trespass on the case; and that this cause of action is a trespass on the case to real or personal property, which is embraced in the section under the term "trespass." It is true that *trespass*, in one sense, means an injury or wrong; and, in that sense, it would include every cause of action, at least in tort. But trespass has, in the law, a well ascertained and fixed meaning. It refers to injuries which are immediate, and not consequential. It is clear that the word is used in that sense in section 2477. It would be a perversion of language to denominate an act, which produced a consequential injury to real or personal property, a trespass. It would be a perversion alike of the legal and common acceptation of the words. Besides, we are not sure that the construction sought to be placed upon sec-

tion 2477 would leave any field for the operation of the 6th subdivision of section 2481.

The judgment of the court below is reversed, the non-suit set aside, and the cause remanded.