295 So.2d 388

CITY OF MOUNTAIN BROOK, a municipal corporation

v.

Mary Alice BEATTY, Individually and as Executive Under the Will of Ola P. Fulghum, Deceased; and Donald C. Beatty.

Mary Alice BEATTY, Individually and as Executrix Under the Will of Ola P. Fulghum, Deceased; and Donald C. Beatty

v.

CITY OF MOUNTAIN BROOK, a municipal corporation.

SC 215, 215–X.

Supreme Court of Alabama.

March 28, 1974.

Rehearing Denied June 20, 1974.

Cabaniss, Johnston, Gardner & Clark, and L. Vastine Stabler, Jr., Birmingham, for appellant and cross-appellee.

Sadler, Sadler, Sullivan & Sharp, Birmingham, for appellees and cross-appellants.

HEFLIN, Chief Justice.

This is an appeal of a suit seeking injunctive relief and damages. The complainants-appellees-cross appellants Beattys (Complainants) allege that the respondent-appellant-cross appellee City of Mountain Brook (Respondent) has dumped water and will continue to dump even more water on the property of the complainants by virtue of a proposed new storm drainage pipe. Complainants sought and obtained temporary and permanent injunctive relief precluding further construction on the proposed new pipe, and also sought a declaration of the rights of the parties with regard to the present use of an open drainage ditch across the complainants' property. In addition, complainants sought damages after alleging that the city's use of the open ditch amounted to a nuisance.

The trial court entered a final decree which, in effect, (1) enjoined Mountain Brook from channeling waters through the open ditch (6 to 8 feet deep and 7 to 10 feet wide) from an old existing storm sewer pipe, (2) enjoined the flow of water into the ditch out of the new pipe (36") under construction, but (3) conditioned the decree so that the respondent was granted an easement across the complainants' property where the ditch now lies and respondent would be relieved of the restrictions of (1) and (2) if it constructed a new underground storm sewer on its easement equivalent to the new pipe already under

construction. The trial court did not award money damages to the complainant.

The facts as established by the testimony taken ore tenus are as follows: Mrs. Beatty acquired title to lot 171, Mountain Brook Estates, New Country Club Sector, in the City of Mountain Brook in 1945 as a gift from her mother, and she is the executrix and sole beneficiary of her mother's estate which includes lot 196 which adjoins lot 171. When the Beatty's built their home in 1949 or 1950 there was in existence an old 24″ storm sewer which passed under most of lot 171 and emptied into what was described as a "babbling brook" traversing lot 196. In about 1950, this old pipe was replaced by the City with a 36″ brick storm sewer which also emptied into the brook. The brook ran about 300 feet, crossed several other lots, then ran into two other city pipes (termed take-off pipes), one 36″ main pipe, and a 24″ pipe which was equipped with a restraining wall so that it carried no water until a certain level was reached. This brook and the drainage pipe system are located in the natural drainage basin for the area and constitute a portion of the City of Mountain Brook's storm drainage system. When the City installed the 36″ pipe in 1950 there was "quite a considerable change" in the drainage, and by 1955 or 1956 the water had so eroded the ditch that a bridge had to be built to facilitate crossing the ditch. Seven or eight years prior to the start of the litigation the drainage ditch began to overflow during periods of heavy rain causing flooding on the complainants' lots. About five years prior to the litigation (which began on May 26, 1972), the complainants and their neighbors began to notice evidence of raw sanitary sewage in the ditch, and, after an overflow raw sewage would be deposited on their lots. For eight years prior to the trial, the complainants made protests to various city officials in an effort to have the problem alleviated. Just prior to the litigation the respondent began construction of several new underground pipes designed to improve the overall drainage system in the area and not to deal only with the problem of the ditch across lot 196. The proposed construction would include installation of another 36″ take-off pipe at the lower end of the ditch and installation of a 36″ pipe which would carry water under Overhill Road, underneath lot 172 (owned by a different party) near its boundary with lot 171, and dump it into the ditch upstream near the boundary between lot 171 and lot 196. The water carried by this last pipe would flow into the ditch at about the same place it would if permitted to flow naturally, but would flow at a faster rate through the pipe thus putting a larger volume of water in the ditch in a relatively shorter time after a downpour. Since the completion of the new 36″ take-off pipe (located some 300 feet downstream at the end of the ditch) apparently there has been no flooding in the area. An expert witness (an engineer) called by the complainants testified that a stump in the ditch "serves as an obstruction about 80% of the drainage capacity of the ditch," and that rocks and bushes are also great obstacles to the flow of the water. He stated that his opinion was that the ditch "will continue to flood until the channel is improved, or cleaned up, or opened up in some nature." The expert was also of the opinion that the two 36″ take-off pipes and the 24″ take-off pipe would be insufficient to carry off all water in peak periods of heavy rains, but felt that two underground 36″ pipes replacing the open ditch "would be enough to handle the water 90 to 99% of the time." The city engineer for Mountain Brook stated that the planned additional pipes would decrease the flooding problem in the area.

Finally, the city manager of Mountain Brook testified that he was prepared to have the ditch cleaned out and straightened as much as possible if his men were permitted access to it by the complainants.

The sketch below, not purporting to be to scale, shows the relative position of the various lots and drainage pipes. Reference to this sketch may aid in understanding the factual context of this case.

On appeal, the respondent alleges the decree is erroneous in all of its aspects and argues that (1) the City of Mountain Brook had acquired rights to use the open ditch by prescription; (2) the evidence of sanitary sewage in the ditch does not provide a proper basis for the injunction against drainage from the old or the proposed pipe; (3) the city cannot be enjoined from constructing the new pipe on property (lot 172) adjacent to the complainants' land; (4) the injunctive relief should not obtain against the proposed pipe because it is merely a prospective or threatened nuisance with only doubtful injury; and (5) the trial court was not empowered to establish and prescribe the specifications of public works for the respondent city.

The complainants filed a cross appeal alleging the trial court was in error for (1) failing to award any damages in lieu of a condemnation award for the improperly granted easement; (2) failing to grant damages resulting from a nuisance created by the city in allowing raw sewage to pollute the open ditch; (3) granting the respondent the right to construct a storm sewer on the complainants' property; and (4) granting the respondent an easement on complainants' land if respondent chooses to construct the sewer.

## ON APPEAL

The key issue in this case—the one issue upon which practically all claims of both parties stand or fall—is whether the City of Mountain Brook has the right to drain water across the Beattys' property, and, if so, to what extent such right exists. This court finds that the city does possess the right to drain across the complainants'

property in the ditch, but does not have the right to flood the complainants' property. The case is to be remanded to the trial court with instructions to modify the injunction in a manner not inconsistent with this opinion.

█ The issue of whether the city has the right to drain across the complainants' property is raised by respondent's first contention, by which the respondent claims that "[w]hatever rights the City of Mountain Brook may have required were acquired by prescription." Apparently what the respondent means by this proposition is that if the general water law of Alabama does not give the city the right to channel water across lot 196, then the city has acquired the right to do so by prescription. However, the respondent does not argue the general water law in brief, but argues only the claim of prescription. Thus under Rule 9, Revised Rules of Practice in the Supreme Court, the court will not consider the ground not argued, see, e. g. Thrasher v. Darnell, 275 Ala. 570, 156 So.2d 922 (1963), but will examine only the claim of an easement by prescription.

The issue whether a party can obtain an easement for drainage by continuous use for the prescriptive period has been rarely litigated in this state. The only Alabama case on this issue cited by either party seems to recognize that such a right exists, but the court there held that the evidence did not support the lower court's finding. See Kratchoville v. Cloverleaf Plaza, Inc., 276 Ala. 562, 165 So.2d 112 (1964). See also Roundtree v. Brantley, 34 Ala. 544 (1859).

The general principles have been succinctly stated as follows:

"An easement of drainage through a ditch to or across the land of another may be acquired by prescription, and the principles and requisites of the acquisition of an easement by prescription in a private way apply. In order to acquire the right, the use must have extended the required time, and must have been adverse, peaceable, uninterrupted, and under a claim of right . . . .. The ditch or drain must have been an apparent, open, visible, or notorious encumbrance; and there must have been an actual occupation by the flow of water."

93 C.J.S. Waters § 121, at 821–822. See also Acadia-Vermilion Rice Irrigating Co. v. Broussard, 175 So.2d 856 (Ct.App.La. 1965); Riggs v. Ketner, 299 Ky. 754, 187 S.W.2d 287 (1945); Hargraves v. Wilson, 382 P.2d 736 (Okl.1963).

In Alabama the prescriptive period is 20 years. Fitts v. Alexander, 277 Ala. 372, 170 So.2d 808 (1965). In Stearnes v. Woodall, 218 Ala. 128, 117 So. 643 (1928) this court outlined the following requisites for establishing title by prescription:

"[T]he elements on which the doctrine of prescription is applied differ from those of adverse possession. In the first there must be an individual, continuous possession of user without the recognition of adverse rights, for a period of 20 years, and upon establishment of such claim and user, the law presumes the existence of all the necessary elements of adverse possession or title without fuller proof . . . .."

█ For more than 20 years there had been a city drainage pipe emptying into this "babbling brook" or ditch; during the same period the "babbling brook" had been a part of the city's drainage system and the water flowing through the "babbling brook" or ditch emptied into two drainage take-off pipes (one 36″ and the other 24″) after traveling about 300 feet through the "babbling brook" or ditch. Thus, from the evidence adduced at trial and set out herein it is clear that the City of Mountain Brook had acquired a drainage easement across the complainants' property by prescription.

The complainants counter the respondent's assertion of a prescriptive drainage easement by apparently claiming that the law in Alabama is such that no prescrip-

tive easement can be obtained in an incorporated town or city because of the position this court has taken with respect to other types of drainage problems.

In cases involving diffused surface water, this court has taken the position that in rural areas a modified civil law rule obtains. Under this rule, land is legally subservient to the natural flowage of surface water and the lower landowner may not disrupt the flow of such water to the upper owner's detriment. See e. g., Vinson v. Turner, 252 Ala. 271, 40 So.2d 863 (1949). But, because of "the artificial conditions created by the building of cities and the improvement of city lots . . .," Hall v. Rising, 141 Ala. 431, 37 So. 586 (1904), this court early took the position that the civil law rule should not apply in cities, but instead adopted the "common enemy" doctrine for incorporated areas. This common enemy rule is to the effect that surface water is regarded as a common enemy, and every landowner has the right, as a general rule, to take any measures necessary for the protection of his own property. See Vinson v. Turner, supra; King Land & Improvement Co. v. Bowen, 7 Ala.App. 462, 61 So. 22 (1913). This rule was, in turn, qualified in Kay-Noojin Development Co. v. Hackett, 253 Ala. 588, 45 So.2d 792 (1950) wherein the court held that an upper owner has no right to collect the surface water in a channel and cast it on a lower owner's land even in a city or town. See generally, Cohen, Water Law in Alabama—A Comparative Survey, 24 Ala.L.Rev. 453, 482–86 (1972).

The complainants' argument seems to be that since the law gives the city no right to channel collected water across complainants' land, and the complainants could build a wall to keep water off of their land, then the city can acquire no drainage rights by prescription. Such an argument is faulty in several respects.

■ First, although it is clear that diffuse surface water may not be collected in a channel and cast on complainants' land,

it is equally clear that water may be channeled into a naturally occurring water course flowing through a lower owner's land even though it could not be cast directly on his land. "In other words, he, [the upstream owner] may be able to collect and discharge diffused surface waters into a water course, but with limitations. He may not be permitted to overtax the capacity of the water course or drainage channel . . . ." R. Beck & E. Clyde, Water and Water Rights, § 451 2(E), at 495 (1972). In a footnote, Beck & Clyde quote the following language from a Mississippi case which supports their position:

"We do not think the rule in this state, prohibiting the adjoining owner from collecting his surface waters and discharging them upon his neighbor, is applicable in this case, because the discharge of the collected waters into the natural outlet here is but the exercise of the right of the riparian owner to reasonably discharge his surface water into the water course. But whether the upper owner may exceed the capacity of the stream and thereby damage the lands of the lower owner is a question that we must now decide.

"We have no decision of our courts to govern us, and the authorities elsewhere are in conflict; the greater weight, in number of decisions, however, supports the principle that the upper owner is not unlimited in his use of the water course, and cannot increase the flow of the stream beyond its natural capacity to the injury of another. In other words, the majority of the courts hold, and the text-writers announce it as the accepted view, that the right of the upper owner to drain into the water course is qualified to the extent that the flow must not be increased beyond the capacity of the stream." Board of Drainage Comrs., Dist. No. 10, Bolivar County v. Board of Drainage Comrs., Washington County, 130 Miss. 764, 95 So. 75, 28 A.L.R. 1250 (1923).

The Supreme Court of Mississippi, after acknowledging the general rule of the right of an adjoining owner to discharge collected surface water into a natural water course, did not agree with the generally accepted rule that one cannot increase the stream beyond its natural capacity to the injury of another, and decided the case to the contrary. This court, however, agrees with the majority of the courts and the text-writers, at least in cases involving drainage problems in towns and cities.

Furthermore, it has been held, even under the modified common enemy doctrine, that while a lower landowner may fend off diffused surface waters, he may not obstruct or otherwise interfere with a natural water course to his neighbor's detriment. McCary v. McLendon, 195 Ala. 497, 70 So. 715 (1915).

■ Finally, the very essence of the concept of prescription is the creation of rights in one party where none existed before. The complainants took no steps during the 20 year period to fend off the common enemy or to prevent the casting of collected water by the city on their property. Thus it seems clear that not only is it possible to obtain a prescriptive easement of drainage in a town or city, but, in fact such an easement was obtained by the City of Mountain Brook by use of the drainage ditch for a period of greater than 20 years. Cf. Roundtree v. Brantley, supra; Munn v. Horvitz Co., 120 Ohio App. 324, 184 N.E. 2d 231 (1962).

■ The complainants further claim there was no pleading to support a finding of an easement on the part of the city. It should be noted that paragraph (F) of complainants' prayer for relief reads as follows:

"(F) That the Court will make a declaration of the rights of the complainants and the rights of the city with regard to its present usage of said open ditch across said lot 196 and the dumping of raw sewage into said ditch;"

Furthermore paragraph (6) of the complaint reads:

"(6) The complainants further aver that the City of Mountain Brook does not have any easement for a storm sewer, sanitary sewer, or for any other purpose, across lot 196, at the location of said open ditch."

In its answer respondent denied the allegations of paragraph (6) of the complaint. This would seem to be sufficient pleading to support the finding of an easement on behalf of the respondent.

By finding that the city has an easement for drainage, however, the court does not imply that the city possesses the right to flood the complainants' property. In City of Atlanta v. Williams, 218 Ga. 379, 128 S. E.2d 41 (1962), the Supreme Court of Georgia had before it a case remarkably similar to the instant case on its facts. There the city had collected storm water in city pipes and cast it in a ditch flowing through the complainants' property for more than 20 years; however, the water in recent years had been overflowing the ditch and spilling out on complainants' property. The Supreme Court of Georgia held:

"Conceding that the city had by a use of this ditch for twenty (20) years acquired an easement by prescription, the evidence did not demand a finding that for twenty (20) years there had been a continuous overflow of the water from the ditch onto the Williams' property. If the city claims a right to use the drainage ditch then it is under a duty to maintain it so that the content and flow of surface waters would not overflow to the damage of the adjacent property owners. See Goble v. Louisville & Nashville Railroad Co., 187 Ga. 243, 200 S.E. 259."

See also Peacock v. Stinchcomb, 189 Mich. 301, 155 N.W. 349 (1915) (prescriptive right of drainage can only be exercised in manner and to extent used during prescriptive period). See generally R. Beck & E. Clyde, supra, § 455.2 at 525–26.

It would seem from the evidence in the case at hand that indeed the City of Mountain Brook had acquired rights to drain through the ditch by prescription, but the evidence is also undisputed that the flooding has occurred for less than the prescriptive period. Therefore the decree of the trial court should be modified to the extent that the city is found to have a prescriptive easement of drainage, but the respondent should be enjoined from casting water into the ditch in such a manner as to cause the ditch to overflow. See Roundtree v. Brantley, supra; City of West Point v. Womack, 178 Miss. 808, 174 So. 241 (1937).

The prescriptive right to drain carries with it the corresponding duty to maintain the ditch in such a condition that the water cast in the ditch by the city not cause it to overflow. While the city should be enjoined from causing a flood on complainants' property, it would seem inappropriate for this or any other court to prescribe exactly how the city should solve this problem. See 56 Am.Jur.2d Municipal Corporations, § 560, p. 613; Birch v. City of New York, 190 N.Y. 397, 83 N.E. 51 (1907); Intendant and Town Council of Livingston v. Pippin, 31 Ala. 542 (1858).

Perhaps proper maintenance of the ditch will eliminate the flooding or perhaps another take-off pipe will have to be installed. It may be that the city will find it necessary to pipe its water underground across its easement, in order to prevent the city's water from causing the overflow. (Of course if the city water were to be completely encased in pipe, and the area still flood due to its being the natural drain basin, the city should not be held responsible.) But the remedy is best left to the sound discretion of the city planners and officials. The trial court should, of course, maintain continuing jurisdiction to ensure good-faith compliance with its order prohibiting overflow.

There was a conflict of evidence as to the presence of sanitary sewerage in the ditch, but it is not clear from the trial court's decree just what its finding was as to the presence or absence of raw sewage. However, on remand, the trial court in revising its decree should take into consideration this matter.

Having determined that the city had the right to drain into the ditch but not to flood the complainants' property, the court need not reach respondent's remaining contentions. Since the city possesses an easement to drain across lot 196, has acquired an easement across the adjacent lot 172 from its owners and is enjoined from flooding complainants' property, there is no reason to preclude the city from completing its new 36″ pipe on lot 172 to solve another drainage problem in the area. Further, since the injunction should be limited to prohibiting the flooding of complainants' property—with the means of preventing the overflow being left to the sound discretion of the city planners—the court cannot be accused of interfering with the operation and functioning of the municipal authorities in trying to solve the city's overall drainages situation. However, should evidence of bad faith be brought to the trial court's attention at a later date, the continuing jurisdiction of the court could be invoked to resolve any problems.

## ON CROSS APPEAL

The finding of the drainage easement by prescription and the modification of the injunction based on such finding also renders extensive discussion of most of the cross-appellants' contentions unnecessary.

It would seem implicit in finding a drainage easement by prescription that no compensation would be due the complainants. Complainants cite no case holding that a party burdened by a prescriptive easement was due compensation, nor has this court found one.

The matter pertaining to damages concerning the presence of raw sewage is not properly before this court since the trial court's final decree is not clear as to its

finding pertaining to the presence or absence of raw sewage.

The finding by this court that the city holds an easement by prescription to drain across this area, and the corresponding duty of the city to maintain its drainage easement so as not to cause an overflow on complainants' property resolves complainants' third argument. Enclosing the water in an underground pipe would be within the scope of the city's duty properly to maintain the drainage ditch if no other method of preventing the city's water from causing an overflow on complainants' property proved to be workable. Furthermore, as the respondent points out in brief, it would seem strange indeed to permit the complainants to assign as error relief they suggested in the complaint. Paragraph eight of the complaint reads in part as follows:

"(8) Your complainants aver that the City of Mountain Brook must not construct any further storm sewer system, or adjunct to the present system, in the immediate vicinity of lots 171 and 196 unless and until . . . (b) the open ditch is enclosed across lot 196 . . .."

But for the fact that the city holds an easement by prescription the court might be disposed to look favorably on the complainants' last argument—that the court erred in granting an easement. But since this court has already found that a prescriptive easement exists in favor of the city and since such an easement carries with it both the right and duty of proper maintenance of the easement, it is not necessary to pursue this assignment further.

## CONCLUSION

It is clear from the discussion set out above that this court shares the view of the court below that the complainants are due a measure of relief from the drainage problem which besets them, but at the same time, existing rights of the respondent must be respected. It is the opinion of this court that the various interests of the parties can best be protected by a final decree fashioned in a manner not inconsistent with this opinion, The case is reversed and remanded with instructions to modify final decree as indicated herein.

Reversed and remanded with instructions.

MERRILL, MADDOX and FAULKNER, JJ., and LAWSON, Supernumerary Justice, concur.