The City of Montgomery filed suit against the Couturiers seeking an injunction and a declaratory judgment, claiming that it had a prescriptive easement for spillage onto a lot owned by the Couturiers. The city also filed a motion for a temporary restraining order and a preliminary injunction to prevent the Couturiers from impeding the flow of drainage water over the lot in question.
After a hearing on the city's motion for a preliminary injunction, the court issued an order denying that relief.
Thereafter, the Couturiers filed an answer and counterclaim for $10,000 damages, alleging that, in the interim since the court's order, the city had intentionally collected and dumped water on the property. They also sought an injunction restraining the city from doing so.
The city filed an answer to the counterclaim, raising the defense of a prescriptive easement, then filed another motion for an injunction alleging defendants were building a retaining wall in excess of the height allowed by the Zoning Ordinances.
The court entered an order forbidding defendants from constructing any portion of their wall to a height exceeding three feet. Thereafter, the city filed a motion for summary judgment or, in the alternative, a *Page 627 
motion to strike defendants' claim for damages. After a final hearing, the court entered its final decree, finding that the city had failed to establish the existence of a prescriptive easement for spillage onto the Couturiers' property. It also stated that, in light of its findings, it did not reach the damage issue.
The city appealed, asserting that the decree of the court is clearly erroneous and against the great weight of the evidence. We affirm.
In June of 1977, the Couturiers acquired the lot described as Lot E of the Mohican subdivision from the Nicrosi brothers, developers of the subdivision. The Nicrosi brothers had, in turn, acquired the property in 1974 from the Weil family, which had owned the entire tract later subdivided. The Weils had owned the property since 1917.
On January 5, 1978, the slab was laid for a house on Lot E. Shortly thereafter, Wiley Couturier noticed a large accumulation of water on his property after a rain. He called the city engineer and maintenance department, which sent someone out to his lot to inspect. He was told at that time by a representative of the city that the water came from a neighboring lot, which was slightly higher than Lot E. He continued construction of his house. Some three and a half to four months later, the Couturiers discovered a concrete header and pipe, which belonged to the city, debouching on their property. The pipe was obscured by a large hedgerow. Witnesses for the city testified that the purpose of the pipe was to drain a ditch which paralleled Carter Hill Road. Water flowed through the pipe only during rains and for a period of about five minutes afterwards. As it traversed Lot E, it followed the contours of the land until it was absorbed, rather than flowing through an established ditch. City officials who reviewed the proposed plans and plats of the Mohican subdivision were aware of the existence of the pipe, and of the water problem which it caused.
After being informed by the city that the developers of the subdivision had responsibility for the problem, defendant, Wiley Couturier, wrote a letter informing the city that he intended to build a retaining wall to protect his property. The city then filed this suit.
No ground for reversal is more carefully scrutinized or rigidly limited than one charging that a finding of fact made on disputed facts by a trial judge is against the great weight of the evidence. Kilcrease v. Harris, 288 Ala. 245,259 So.2d 797 (1972). Further, if a decree correctly determines a case, the reasons on which the trial court acted are unimportant and the case will be affirmed. A correct decision will not be disturbed even if the court gives the wrong reasons. Clanahanv. Morgan, 268 Ala. 71, 74, 105 So.2d 429 (1958). Therefore the issue before us is whether the trial court reached a correct result which is supported by the evidence.
City of Mountain Brook v. Beatty, 292 Ala. 398, 295 So.2d 388
(1974), establishes that it is possible to obtain a prescriptive easement of drainage through a ditch in a town or city. This court cited, with approval, the following passage:
 "`An easement of drainage through a ditch to or across the land of another may be acquired by prescription, and the principles and requisites of the acquisition of an easement by prescription in a private way apply. In order to acquire the right, the use must have extended the required time, and must have been adverse, peaceable, uninterrupted, and under a claim of right . . . The ditch or drain must have been an apparent, open, visible, or notorious encumbrance; and there must have been an actual occupation by the flow of water.'
 "93 C.J.S. Waters § 121, at 821-822." (292 Ala. at 403, 295 So.2d at 391)
Relying on this, the trial court ruled:
 ". . . There must have been either an open and obvious ditch, or if the easement is claimed where there is no ditch, there must have been a continuous occupation of the land by a flow of water. In other words, in order to acquire an easement *Page 628 
by prescription, the evidence must show a visible condition which would reasonably put a landowner on notice that the land is adversely occupied."
This is a correct statement of the law. Several witnesses, including an engineer, testified that the pipe was not visible from an inspection of the lot. The water from the pipe made a visible flow only during heavy rains and for a short while thereafter. Therefore, the evidence supports the trial court's conclusion.
Assuming, as the city urges, that an easement for drainage can be obtained by prescription where there is no visible ditch or drain, the city had the burden to establish that such easement was acquired in this case. The trial court held that it had not done so. There being evidence to support this finding, we affirm.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.