MURDOCK, Justice.
Nationwide Mutual Fire Insurance Company (“Nationwide”) appeals from an order of the Madison Circuit Court denying Nationwide’s motion to show satisfaction of the judgment and granting Walter George Austin and Charlene Austin’s motion for taxation of additional costs following a judgment in favor of the Austins. We affirm in part and reverse in part.

I. Facts and Procedural History

On May 18, 2004, the Austins’ vehicle was involved in an accident with a vehicle driven by Stephen Anthony Horton. The Austins suffered injuries as a result of this accident, and they filed a complaint in the Madison Circuit Court alleging negligence against Horton and seeking uninsured-motorist (“UM”) benefits[1] from Nationwide and State Farm Mutual Automobile Insurance Company (“State Farm”), the Austins’ automobile insurance carriers.
The Austins’ automobile-insurance policy with Nationwide (“the policy”) provided UM coverage. The policy also provided medical-payment coverage. The portion of the policy providing UM coverage contained a section entitled “Limits and Conditions of Payment.” In that section, the policy stated, in pertinent part:
“4. Damages payable [for UM coverage] will be reduced by any amount paid or payable under:
“a) the Medical Payments coverage in this policy.”
*1240 Following discovery, both State Farra and Nationwide filed motions, which the trial court granted, to opt out of the trial pursuant to the procedure provided by this Court in Lowe v. Nationwide Insurance Co., 521 So.2d 1309 (Ala.1988).[2] As contemplated in Lowe, Nationwide remained a party defendant to the Austins’ action.[3]
At the conclusion of the trial on May 2, 2007, the jury rendered a vei*dict in favor of the Austins and assessed damages in the amount of $130,000 for Walter Austin and $60,000 for Charlene Austin. Based on that verdict, the trial court entered a judgment on the same date and for the same amounts against both Horton and Nationwide. On May 15, 2007, the Austins filed a motion for taxation of additional costs. The Austins requested, pursuant to § 12-21-144, Ala.Code 1975,[4] the taxation as costs of the amounts paid to a court-reporting service for transcripts and videotapes of two depositions of treating physi-dans that the Austins had offered as evidence during the trial. Nationwide did not file an objection of any kind to this motion.
On May 29, 2007, Nationwide tendered to Walter Austin $95,369.07, and tendered to Charlene Austin $31,736.71. The Austins refused to acknowledge these payments as payment in full for the judgment, and, as a result, Nationwide filed what it styled as a motion to show satisfaction of the judgment. Nationwide asserted in its motion that, pursuant to the terms of the policy, it was entitled to a setoff of the medical payments it had previously tendered to the Austins against the final judgment awarded. Nationwide had previously made payments to the Austins under the medical-payments provision of the policy in the amounts of $14,630.93 to Walter Austin and $11,201.29 to Charlene Austin.[5]
The trial court held a hearing on the Austins’ motion for taxation of additional *1241 costs and Nationwide’s motion for satisfaction of the judgment. On June 20, 2007, the trial court issued an order granting the Austins’ motion and denying Nationwide’s motion.
With regard to the taxation of additional costs, the trial court found that the Austins had “properly established the actual cost of each deposition and that said depositions were introduced during the course of the trial.” It therefore concluded, pursuant to § 12-21-144, Ala. Code 1975, that “the cost of such depositions should be taxed as additional costs in this case” in the amount of $903.83 against all the named defendants.
Concerning Nationwide’s motion for satisfaction of the judgment, the trial court concluded that Nationwide’s election to opt out of the litigation bound it to the amount of damages awarded in the final judgment and that the medical-payments setoff provision of the policy would limit the recovery allotted to the Austins in the final judgment in a manner contrary to the public policy of § 32-7-23, Ala. Code 1975,[6] which requires automobile insurance companies selling automobile-liability policies in Alabama to provide UM coverage in their policies.
Nationwide appeals from the trial court’s June 20, 2007, order, objecting to both the taxing of additional costs and the denial of Nationwide’s motion for satisfaction of the judgment. In the alternative, Nationwide states that it appeals the May 2, 2007, order of the trial court memorializing the jury verdict in favor of the Austins. Nationwide offers no arguments on appeal, however, concerning the May 2, 2007, order; accordingly, it has waived any objection to that order.

II. Standard of Review

We review a trial court’s ruling on taxation of costs under § 12-21-144, Ala. Code 1975, to determine whether the trial court exceeded its discretion. See Vulcan Oil Co. v. Gorman, 434 So.2d 760, 762 (Ala.1983) (stating that “the taxation of costs ... rests in the discretion of the trial judge, whose decision will not be reversed unless clear abuse is shown”).
Although not styled as such, Nationwide’s postjudgment motion for relief from the judgment on the ground that the judgment had been satisfied is properly considered a motion filed pursuant to Rule 60(b)(5), Ala. R. Civ. P. Rule 60(b)(5) provides that a court may relieve a party from a final judgment if the circumstances presented fall within one of three categories, namely: “[i] the judgment has been satisfied, released, or discharged, or [ii] a prior judgment upon which it is based has been revered or otherwise vacated, or [iii] it is no longer equitable that the judgment should have prospective application.” Nationwide’s motion for relief on the basis of a satisfaction of the judgment falls within the first of these three categories.
As has been recognized in cases such as Satterfield v. Winston Industries, Inc., 553 *1242 So.2d 61, 63 (Ala.1989), whether the circumstances warrant relief to a movant under Rule 60(b)(5) can involve the “discretion of the trial court, and its decision will not be reversed unless there [is] an abuse of that discretion.” As the Court in Sat-terfield noted, however, “[t]hat portion of Rule 60(b)(5) relied on by Satterfield applies only when new facts or new law arises after the original judgment is entered, rendering prospective application of the judgment inequitable.” 553 So.2d at 63. The application of an abuse-of-discretion standard in cases such as Satterfield is consistent with the nature of the issue presented and the relief sought. As one court has explained in reference to motions for relief of the nature provided by Rule 60(b),
“[i]f there is a discretionary appraisal or weighing by the [trial] court of the facts of a particular case, the [trial] court’s determination on appeal is subject to abuse or misuse of discretion. Here, the standard of review is the standard abuse of discretion test.”
In re Marriage of Barnes 251 Mont. 334, 336, 825 P.2d 201, 203 (1992).
Our cases recognize that where relief is sought under a different provision of Rule 60(b) — Rule 60(b)(4) — a de novo standard of review is applied. This is so because the issue of jurisdiction raised in a Rule 60(b)(4) motion is a purely legal one. Thus it was that the Court in Satterfield was able to contradistinguish the alternative relief sought under Rule 60(b)(4) in that case from the relief also sought in that case under the above-referenced portion of Rule 60(b)(5):
“The standard of review on appeal from the denial of relief under Rule 60(b)(4) is not whether there has been an abuse of discretion. When the grant or denial of relief turns on the validity of the judgment, as under Rule 60(b)(4), discretion has no place. If the judgment is valid, it must stand; if it is void, it must be set aside.”
553 So.2d at 64. As the United States Court of Appeals for the Eleventh Circuit explained in Sloss Industries Corp. v. Eurisol, 488 F.3d 922, 925 (11th Cir.2007): “We review de novo ... a district court’s ruling upon a Rule 60(b)(4) motion to set aside a judgment as void, because the question of the validity of a judgment is a legal one.” (Emphasis added). See Export Group v. Reef Indus., Inc., 54 F.3d 1466, 1469 (9th Cir.1995) (“Ordinarily, motions for relief from judgment pursuant to Federal Rules of Civil Procedure 60(b) are addressed to the sound discretion of the district court and will not be reversed absent some abuse of discretion.... We review de novo, however, a district court’s ruling upon a Rule 60(b)(4) motion to set aside a judgment as void, because the question of the validity of a judgment is a legal one.”) (emphasis added).
As the Supreme Court of Montana explained in Essex Insurance Co. v. Moose’s Saloon, Inc. 338 Mont. 423, 428-29, 166 P.3d 451, 455-56 (2007):
“Our standard of review of a [trial] court’s ruling on a motion pursuant to [Rule] Civ. P. 60(b) depends on the nature of the final judgment, order, or proceeding from which relief is sought and the specific basis of the Rule 60(b) motion .... As a general rule, the [trial] court’s ruling is reviewed for abuse of discretion.... By contrast, where the movant sought relief under subsection (4) of Rule 60(b) on the ground that the judgment is void, the standard of review is de novo, since the determination that a judgment is or is not void is a conclusion of law. Export Group [v. Reef Indus., Inc.], 54 F.3d [1466] at 1469 [ (9th Cir.1995) ] (‘We review de novo ... a district court’s ruling upon a Rule *1243 60(b)(4) motion to set aside a judgment as void, because the question of the validity of a judgment is a legal one.’).”
(Emphasis added.) See also Landmark West Enters., LLC v. Wei Yu Ren, (No. CIV.-07-0280-F, June 8, 2007) (W.D.Okla.2007) (not reported in F.Supp.2d) (“When reviewing a bankruptcy court’s determination of a Rule 60(b)-type motion to reconsider, to the extent the bankruptcy court based its ruling on discretionary factors, the review is for abuse of discretion; to the extent the bankruptcy court’s ruling was based on its findings of fact and conclusions of law, traditional review applies to those determinations — clearly erroneous is the standard of review for the findings of fact, and de novo review applies to the legal conclusions.”).
Because the issue presented here is a purely legal one — whether Nationwide is entitled to set off amounts paid to the Austins under the medical-payments coverage in the policy against amounts otherwise owed the Austins under the policy’s UM coverage — we review de novo the trial court’s denial of Nationwide’s motion for a satisfaction of the judgment.

III. Analysis

Nationwide contends that the trial court erred in taxing additional costs to the defendants for the expense of two depositions the Austins introduced as evidence during the trial. Specifically, Nationwide argues that the invoices from the court-reporting services the Austins attached to their motion for taxation of additional costs to establish the expense of those depositions constituted inadmissible hearsay. According to Nationwide, without the invoices, the Austins failed to establish the cost of the depositions, and, therefore, the trial court should have denied them motion.
Nationwide did not object to the Austins’ motion in the trial court. In fact, it made no argument whatsoever concerning the taxation of additional costs to the trial court. Horton filed an objection to the Austins’ motion, but he did not raise the issue of the Austins’ allegedly using hearsay evidence to prove the cost of the depositions. Because Nationwide’s argument was not presented to the trial court, we cannot consider it on appeal. See Marks v. Tenbrunsel, 910 So.2d 1255, 1268 (Ala.2005) (“ ‘This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.’ ” (quoting Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992))). The trial court’s ruling on the Austins’ motion for taxation of additional costs is therefore due to be affirmed.
As noted above, Nationwide also appeals the trial court’s denial of its motion for satisfaction of the judgment based on the provision in the Austins’ automobile-insurance policy that permits Nationwide to set off benefits paid under the medical-benefits portion of the policy against the damages due for UM coverage. The latter coverage is provided pursuant to § 32-7-23, Ala.Code 1975, the uninsured-motorist statute (“the UM Act”). “[Section] 32-7-23, Ala.Code 1975, requires that every automobile-liability-insurance policy issued or delivered in Alabama provide uninsured-motorist coverage with limits for bodily injury or death of at least $20,000 per person, unless the coverage is specifically rejected in writing by the named insured.” Continental Cas. Co. v. Pinkston, 941 So.2d 926, 929 (Ala.2006).
The trial court denied Nationwide’s motion for satisfaction of the judgment for three reasons. First, it noted that Nationwide had elected to opt out of the litigation, and, as a result, Nationwide was *1244 “bound by the factfinder’s decisions on the issues of liability and damages.” Lowe, 521 So.2d at 1310. The trial court ruled that this meant that Nationwide could not object to the award of damages in the action.
In concluding that Nationwide could not demand satisfaction of the judgment on the basis of the setoff provision in the policy because it had opted out of the litigation, the trial court misunderstood the opt-out process we explained in Lowe. As the Lowe Court stated, in an action for UM benefits under the plaintiffs policy,
“[i]f the insurer is named as a party, it would have the right, within a reasonable time after service of process, to elect either to participate in the trial (in which case its identity and the reason for its being involved are proper information for the jury), or not to participate in the trial (in which case no mention of it or its potential involvement is permitted by the trial court). Under either election, the insurer would he bound by the factfinder’s decisions on the issues of liability and damages.”
Lowe, 521 So.2d at 1310 (some emphasis added; some emphasis omitted).
If the above-emphasized passage is to be interpreted as the trial court interpreted it, then an insurer in Nationwide’s position would not be able to assert any right it would otherwise have to enforce a setoff provision, or for that matter to assert other contractual defenses it might have under the terms of its insurance policy, even if it elected to participate in the litigation. The correct reading of Lowe is that a UM insurer that elects not to participate in the litigation forgoes the right to question, as the above-quoted passage indicates, the fact-finder’s decision as to whether the alleged tortfeasor is liable to the insured and, if so, in what amount. That question, however, is a different question than whether, as between the insurer and the insured, the contractual terms of the parties’ insurance policy limit the insurer’s liability to the insured for the damages awarded against the tortfeasor.[7]
Nationwide is not challenging the amount of damages awarded to the Austins and against Horton; it is asserting its purported right based on the policy to offset the medical payments it has already made to the Austins against the amount awarded. Because Nationwide is not questioning “the factfinder’s decisions on the issues of liability and damages,” 521 So.2d at 1310, its election to opt out of the litigation does not prohibit it from taking advantage of the setoff provision of its policy with the Austins.[8]
*1245 The trial court also denied Nationwide’s motion because the trial court
“specifically recall[ed] that the [Austins’] counsel, in final argument, pointed out to the jury that most of the past medical bills incurred by the [Austins] had been paid and that the [Austins] were asking only to be reimbursed for their deductible or out of pocket expenses. The [Austins] offered evidence of substantial future medical expenses along with evidence of lost income, permanent disabilities and pain and suffering. The total damages presented by the [Austins] significantly exceeded the jury award and, as noted herein, did not include past medical expenses that had been previously reimbursed. The Court therefore finds that there was no double recovery by the [Austins] in this case.”
The problem with this reasoning is found in a closer look at the policy language at issue. The UM provision of the Austins’ policy provides that Nationwide “will pay damages ... which are due by law to [the insured] from the owner or driver of an uninsured motor vehicle because of bodily injury suffered by [the insured.] Damages must result from an accident arising out of the 1. ownership; 2. maintenance; or 3. use; of the uninsured motor vehicle.” The trial court’s reasoning would be appropriate if it had been established that the “damages ... due by law” to the Austins from the uninsured motorist, Horton, included the amounts of $130,000 and $60,000 awarded by the jury plus the amounts of the medical payments already made on behalf of each of the Austins by Nationwide.[9] This was not established, however.
Instead, according to the trial court’s June 20, 2007, order, the Austins did not ask the jury to consider including in their awards to the Austins any amounts for the previously made medical payments. Therefore, we do not know whether, if the Austins had asked the jury to include in its awards amounts equal to such payments, the jury would have done so. Indeed, what we do know, according to the trial court, is that the jury did not award the Austins all the damages they requested. For all we know, the jury would have declined to award the Austins some or all of their prior medical expenses had it been asked to do so. Any attempt to state otherwise would require some degree of speculation.
In any event, the only actual measure of “damages ... due by law” from Horton to the Austins that has been established in this case is the measure that the jury actually awarded. It is necessarily with respect to such ascertained “damages” that the policy provisions at issue must operate.
Finally, the trial court denied Nationwide’s motion because it concluded that the policy provision permitting Nationwide to set off medical payments against damages recovered on a UM claim was contrary to the public policy expressed in the UM Act. The trial court quoted this Court’s statement in State Farm Mutual *1246 Automobile Insurance Co. v. Motley, 909 So.2d 806, 812 (Ala.2005), that ““‘[t]he Uninsured Motorist Statute is construed so as to assure a person injured by an uninsured motorist will be able to recover the amount of his damages in that the insurer will not be allowed to insert provisions in the policy limiting the insured’s recovery.” ’ ” (quoting Dillard v. Alabama Ins. Guar. Ass’n, 601 So.2d 894, 896 (Ala.1992), quoting in turn Alabama Ins. Guar. Ass’n v. Hamm, 601 So.2d 419, 423 (Ala.1992) (emphasis omitted)). See also Progressive Speciality Ins. Co. v. Gore, 1 So.3d 996, 999 (Ala.2008) (citing Star Freight, Inc. v. Sheffield, 587 So.2d 946, 957 (Ala.1991)). The trial court reasoned that enforcing the policy’s medical-payments-setoff provision would impermissi-bly limit the recovery allotted to the Austins in the final judgment.
The question before us is whether a setoff provision of the nature found in the Austins’ policy with Nationwide constitutes an improper limitation on their recovery of UM benefits. This is the same question this Court addresses today in McKinney v. Nationwide Mutual Fire Ins. Co., 33 So.3d 1203 (Ala.2009). We held in McKinney that “where an insured has contracted only for the statutory minimum UM coverage and the total damages the insured are legally entitled to recover exceed the total of any payment by the tortfeasor’s insurer, the insured’s UM coverage and any medical benefit also paid by the liability insurer to the insured, a policy provision allowing the insurer to set off any medical-benefit payments against the UM coverage is unenforceable as a matter of public policy.” 33 So.3d at 1215.
The present case differs from McKinney in that the Austins have contracted for more than the statutory minimum UM coverage. Even accounting for the medical-payments setoff, the Austins’ recovery under the UM provision in their policy will still be well above the required statutory minimum provided in § 32-7-23(a), Ala. Code 1975. Under the particular circumstances presented in the present case, giving effect to the contractually agreed upon setoff provision would not contravene the public policy of requiring certain minimum amounts of UM coverage to be provided in every automobile liability policy.[10] We therefore conclude that the trial court erred in refusing to honor the otherwise clear and unambiguous setoff provision found in the parties’ insurance contract.

IV. Conclusion

For the foregoing reasons, we affirm the portion of the trial court’s June 20, 2007, order granting the Austins’ motion for taxation of additional costs, and we reverse the portion of the same order denying Nationwide’s motion for a satisfaction of the judgment. The cause is remanded to the trial court for further action consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
*1247 STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
COBB, C.J., and LYONS and WOODALL, JJ., concur in part and dissent in part.

. As defined in the Austins' policy, and as used in this opinion, the terms "uninsured motorist” and "uninsured motor vehicle” refer to both uninsured and underinsured motorists and motor vehicles. See also § 32-7-23(b), Ala.Code 1975. Likewise, the term "UM” is used in this opinion as a shorthand reference to both uninsured and underinsured motorists and motor vehicles.

. The record indicates that following depositions, Horton reached a settlement with the Austins for the limits of coverage available under his liability insurance policy. Nationwide, whose policy with the Austins provided UM coverage of $300,000 per person and $900,000 per occurrence, “fronted" the proposed settlement amount to the Austins, thereby continuing the action against Horton.

. The Court explained in Lowe that
"[a] plaintiff is allowed either to join as a parly defendant his own liability insurer in a suit against the underinsured motorist or merely to give it notice of the filing of the action against the motorist and of the possibility of a claim under the underinsured motorist coverage at the conclusion of the trial. If the insurer is named as a party, it would have the right, within a reasonable time after service of process, to elect either to participate in the trial (in which case its identity and the reason for its being involved are proper information for the jury), or not to participate in the trial (in which case no mention of it or its potential involvement is permitted by the trial court). Under either election, the insurer would be bound by the factfinder's decisions on the issues of liability and damages. If the insurer is not joined but merely is given notice of the filing of the action, it can decide either to intervene or to stay out of the case. The results of either choice parallel those set out above — where the insurer is joined as a party defendant. Whether the choice is timely made is left to the discretion of the trial court, to be judged according to the posture of the case. In either event, the trial court could then fashion its judgment accordingly.”
Lowe, 521 So.2d at 1310 (emphasis omitted; emphasis added).

. Section 12-21-144 provides, in pertinent part, that “[t]he costs of any deposition introduced, in whole or in part, into evidence at the trial by the party taking it shall be taxed as costs in the case upon the certificate of the person before whom the deposition was taken. ..."

. It is not clear from the record who paid the remaining portion of the judgment, although we presume that State Farm has paid any portion for which it was responsible; State Farm is not a party to this appeal.

. Section 32-7-23(a) provides, in pertinent part:
"(a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of Section 32-7-6, under provisions approved by the Commissioner of Insurance for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. ...”

. We note that, in its answer to the complaint, Nationwide placed the Austins and the trial court on notice of its intention to seek a setoff, claiming as its ninth defense a right to “offset” "any collateral payments such as medical expenses ... for some of the damages claimed in this lawsuit.”

. The trial court's order granting Nationwide's motion to opt out of the litigation explicitly recognized that Nationwide “will be bound by the jury's determination in this case of damages subject to its policy limits and the insurance coverage levels of the remaining defendants.” (Emphasis added.) This limitation is consistent with the principle recognized by Alabama courts to the effect that, under the UM Act, the insured "is entitled to collect within the limits of the policy, all damages which he is legally entitled to recover.' " United Servs. Auto. Ass’n v. Smith, 57 Ala.App. 506, 509, 329 So.2d 562, 564 (Ala.Civ.App.1976) (quoting § 32-7-23(a), Ala.Code 1975) (emphasis added); see, e.g., Alfa Mut. Ins. Co. v. Moreland, 589 So.2d 169, 171 (Ala.1991) (stating that "[i]n an action for uninsured motorist benefits, absent fraud or bad faith, an insured may recover from his insurer damages only up to the limits provided for in the contract of insurance”); Safeco Ins. Co. of America v. Jones, 286 Ala. 606, 614, 243 So.2d 736, 742 (1970) (noting that § 32-7-23(a), *1245 Ala.Code 1975, “limits recovery of damages to that amount to which the injured party is 'legally entitled to recover' and that amount is legally settled prior to the claims under the statute and the policies”).

. In such a case, the result reached by the trial court when it denied Nationwide’s post-judgment motion, i.e., leaving Nationwide responsible for the full measure of the $130,000 and $60,000 awarded by the jury, would be achieved by adding the amount of the prior medical payments to the amounts awarded by the jury to calculate the "damages ... due by law” and then allowing a credit for the amount of the prior medical payments, thus leaving an amount due from the insurer equal to the amounts awarded by the jury.

. In response to Justice Woodall's special writing, it is important to note that it is the same contract of insurance that creates in the insured a right to collect more than the statutory minimum $20,000 of UM insurance that places a condition on a portion of that non-required, additional coverage. Nothing in our law prevents the two parties to that insurance contract from voluntarily bargaining for and agreeing to the payment of an additional premium for such additional UM coverage or from agreeing to a premium for additional UM coverage that is conditioned in some respect. The public-policy concern that informs our disallowance of such a condition when it interferes with the statutorily required minimum amount of UM coverage does not extend beyond the protection of that minimum coverage to impede the parties’ freedom of contract as to such additional coverage and premiums to which they may voluntarily agree.