THOMAS, Judge.
Lisa Antoine and her husband, Ronald Glenn, purchased Lot 35 in the Highland Manor at Oxmoor Landing subdivision (“the subdivision”) in November 2007. Antoine and Glenn built a house on Lot 35. After they built the house, Antoine and Glenn began experiencing problems with flooding in their yard caused by the overflow of water from neighboring lots and with an influx of mud and sediment that overflowed from neighboring Lot 40. Oxmoor Preservation/One, LLC (“Oxm-oor”), is the owner of Lots 36, 37, 38, and 39 (“the Oxmoor lots”) in Oxmoor Landing. Johnson Realty Company, Inc. (“Johnson”), was the developer of the subdivision and, at one time, owned Lot 40. Hager Company, Inc. (“HCI”), was the engineering company used by Johnson in designing the subdivision.
Antoine and Glenn sued Oxmoor, Johnson, and HCI, among other defendants who were later dismissed from the action, alleging trespass to property, injury to real property, and nuisance. Oxmoor counterclaimed, asserting a trespass and a negligence claim against Antoine and Glenn, based upon its allegation that Antoine and Glenn had elevated the rear portion of their lot when they built their house, which had resulted in an obstruction of the natural flow of surface waters from the Oxmoor lots. After a trial in December 2010, the trial court entered a detailed judgment in March 2011, finding against Antoine and Glenn on their claims for relief and in favor of Oxmoor on its counterclaims. The March 2011 judgment reads, in part:
“1. [Antoine and Glenn’s] claims for relief are denied as the Court finds that they have failed to meet their burden to reasonably satisfy the Court of the truthfulness of their claims.
“2. Judgment is entered in favor of ... Oxmoor ... and HCI ... on their Counterclaims and against [Antoine and Glenn] in the amount of $35,000.00 compensatory damages.[1]
“3. [Antoine and Glenn] are permanently enjoined from obstructing the free flow of surface waters draining from Oxmoor’s upper land, being Lots 36, 37, 38 and 39, over [their] land, being Lot 35, to Oxmoor’s lower land, being Lot 34, all such lots being part of Highland Manor at Oxmoor Landing Phase One, Sector One, Map Book 216, Page 13, in the Probate Court of Jefferson County, Alabama, Bessemer Division.
“4. [Antoine and Glenn] are ordered to abate the obstruction from such drain way by constructing and permanently maintaining a drain way (whether ditch or other facility) on Lot 35 along an appropriate course, and of a sufficient size and structure, to drain all surface waters that may reasonably be expected to drain from Oxmoor’s upper land, and to conduct them through Lot 35 to Lot 34. Such work shall be performed according to sound engineering] principles and at [Antoine and Glenn’s] expense.
“5. [Antoine and Glenn] and [Oxmoor and HCI] are to, within thirty days after this Order is non-appealable to a high *1209 Court, meet together and [Antoine and Glenn] [are] to share their plans on how to effectuate the mandates of Paragraph 4 above regarding the construction of the drain way. Should [Oxmoor and HCI] have objection regarding the same, the issue of how the drain way is to be constructed shall be submitted to binding arbitration by a neutral to be mutually agreed upon by the parties, and if there be no agreement, selection of the arbitrator by the Court. The costs of such arbitration shall be borne by [Antoine and Glenn]. [Oxmoor and HCI] shall inform [Antoine and Glenn] in writing the date that they consider this Order to be non-appealable which is generally, but not always, the 43rd day after the date this Order is entered if there are no post-trial motions filed; or the 43rd day after the date any post-trial motions are denied.
“6. The construction of the drain way shall be completed within four months after the day the parties meet and agree on [Antoine and Glenn’s] plan of action in accord with paragraph 5 above or within four months after the arbitrator issues his decision regarding how the drain way is to be constructed.
“7. Should [Antoine and Glenn] fail to construct the drain way pursuant this order within the above stated parameters and time frame, [Oxmoor and HCI] shall be authorized to enter upon [Antoine and Glenn’s] property and construct the drain way in such a way as they deem to be in accordance with sound engineering principles.
“8. Should [Oxmoor and HCI] be required to build the drain way they shall be entitled to reimbursement from [Antoine and Glenn] for all costs related to the same. Should [Antoine and Glenn] fail to timely reimburse [Oxmoor and HCI] for such expenses, [Oxmoor and HCI] shall have access to all legal means available to a judgment creditor including but not limited to the entry of a monetary judgment against [Antoine and Glenn]; garnishment and contempt proceedings; and the filing of any appropriate lien.
“9. Costs of this action are taxed against [Antoine and Glenn].
“10. Any requested relief not granted herein shall be deemed denied.”
Both Antoine and Oxmoor and HCI filed postjudgment motions directed to the March 2011 judgment.[2] Antoine attached several documents that had not been introduced as evidence at trial to her post-judgment motion; Oxmoor and HCI successfully moved the trial court to strike those documents. After both post-judgment motions were denied, Antoine and Glenn appealed to this court.[3] The appeal was assigned case number 2100839 (“the nuisance appeal”).
In July 2011, while the nuisance appeal was pending, Antoine and Glenn sought leave from this court to file a Rule 60(b), Ala. R. Civ. P., motion directed to the March 2011 judgment. We granted Antoine and Glenn leave, and they filed a Rule 60(b) motion in the trial court on July 14, 2011. We stayed the nuisance appeal *1210 pending the resolution of the Rule 60(b) action. On September 15, 2011, Antoine filed in the trial court a suggestion of death regarding Glenn.[4] The trial court denied the Rule 60(b) motion on October 21, 2011, and Antoine appealed that judgment. The appeal of the October 2011 judgment was assigned case number 2110139 (“the Rule 60(b) appeal”).[5] Upon the request of the parties, we consolidated the nuisance appeal and the Rule 60(b) appeal.

The Nuisance Appeal

The testimony at trial established that Antoine had leveled Lot 35 to build her house and that, in doing so, she had redistributed dirt from one portion of the lot to fill in other areas of the lot. She testified that she had served as her own general contractor when she built the house. She also said that she understood that when building a house one must ensure that the water does not drain into the house and that one must not obstruct a natural drain way.
Karl Hager, a land surveyor and the president of HCI, testified that, as a land surveyor, he had designed several subdivisions. He said that he had walked the property that became the subdivision and that he had never noticed a wetland or swamp area on the property. He noted that had seen no signs of standing water, of water marks on trees, or of damage to trees that would have been caused by standing water. He stated that the trees in the area were not trees that commonly inhabit swampy or wetland areas, noting that most of the trees in the subdivision were oaks and hickories; he also commented that he had not observed any “marshy” plants, like cattails. According to Hager, the ground was firm and it “perked,” indicating that the soil was permeable.
During Hager’s testimony, he discussed several maps. He stated that a map made by Jefferson County indicating that the area around the lots in question comprised wetlands was incorrect. Hager also testified that, based on his review, other maps, including the United States Quadrangle Map and the United States Geological Survey map, had indicated that the area in question was not a wetland.
Hager explained that a portion of Lot 35 served as a natural drain way for upper lots in the subdivision, including Lots 42, 41, 40, 39, 38, 37, and 36. He testified:
“Well, it was apparent to me, especially when you stand on lot 34, which is lower than the lowest point I could find on lot 38, downhill is from 38 through 35 to 34, and it’s indisputable. It can be verified by me or anybody. And when you stand on 34 and then look back up towards 38, you are going to see a hump that has been created in Ms. Antoine’s backyard. Nice pretty grass sod, but it’s definitely been raised 24 inches plus.”
Hager also explained that he had been present when Jason Ayers, a geotechnical engineer hired by Oxmoor and HCI, measured the elevation on Lot 35 and dug test holes to determine whether Lot 35 had been elevated by the addition of dirt or other fill material. According to Hager, the test holes revealed that, at one point *1211 on Lot 35, at least 32 inches of topsoil and other dirt had been added to the lot to make it level; he noted that the test holes had included some construction debris, indicating that, at one time, the level at which the construction debris appeared was the natural surface level of the Lot 35. Hager also noted that his own elevation testing had revealed that portions of Lot 35 were higher than the natural low point on Lot 35 where surface water would drain. Based on this information, Hager testified that Lot 35 had been elevated by-use of dirt or other fill and that, as a result, the natural drain way had been obstructed, which caused the ponding on the Oxmoor lots.
In her brief on appeal, Antoine questions whether the trial court’s March 2011 judgment is a final judgment for purposes of appeal for two reasons. She first argues that the failure to specifically mention Johnson in the March 2011 judgment prevents that judgment from being final because not all the claims against all the parties have been adjudicated. See Rule 54(b), Ala. R. Civ. P.; Campbell v. Taylor, 76 So.3d 258, 261 (Ala.Civ.App.2011) (“An order that resolves claims against fewer than all the defendants is not a final judgment that is capable of supporting an appeal in the absence of a proper certification of finality pursuant to Rule 54(b).”). We disagree. The March 2011 judgment states that “[Antoine and Glenn’s] claims for relief are denied.” The language used by the trial court does not limit the March 2011 judgment disposing of Antoine and Glenn’s claims to only those claims against Oxmoor and HCI; the judgment refers to Antoine and Glenn’s claims for relief without limitation. Thus, we cannot conclude that the March 2011 judgment is not final because it fails to dispose of Antoine and Glenn’s claims against Johnson.[6]
Antoine also notes that paragraph 5 of the trial court’s judgment clearly envisions continued proceedings regarding the type of drain way Antoine and Glenn were to build under the judgment. As Antoine points out, “[a] final judgment is a terminative decision by a court of competent jurisdiction which demonstrates there has been a complete adjudication of all matters in controversy between the litigants within the cognizance of that court.” Jewell v. Jackson & Whitsitt Cotton Co., 331 So.2d 623, 625 (Ala.1976). Because the judgment leaves open issues to be decided at a later time, Antoine argues, it is not a final, terminative decision.
However, it is well settled that a judgment in equity need not decide all details of the matters between the parties to be a final judgment; instead, the judgment is final if “ ‘it ascertains and declares the rights of the parties and settles the equities.’ ” McCulloch v. Roberts, 290 Ala. 303, 305, 276 So.2d 425, 426 (1973) (quoting Carter v. Mitchell, 225 Ala. 287, 293, 142 So. 514, 519 (1932)). As explained in McCulloch, the determination of finality “ ‘is not controlled by the fact that the cause remains in fieri in respect to other matters.’ ” McCulloch, 290 Ala. at 305, 276 So.2d at 426 (quoting Carter, 225 Ala. at 293, 142 So. at 519). As further ex *1212 plained in Sexton v. Sexton, 280 Ala. 479, 482, 195 So.2d 531, 533 (1967):
“Equity decrees may be partly final and partly interlocutory. A decree which ascertains and declares the rights of the parties and settles the equities is a final decree, although it provides for further proceedings under the direction of the court in order to make the final decree effective, such decree is interlocutory and remains within the control of the court because as to such decree and further proceedings thereunder the cause remains in fieri.”
This rule survived the merger of law and equity and the adoption of the Rules of Civil Procedure. Miles v. Bank of Heflin, 295 Ala. 286, 290, 328 So.2d 281, 284-85 (1976) (applying the rule set out in McCul-loch to determine that a judgment in which the trial court ordered reference to a special master for certain determinations was, in fact, a final judgment that would support an appeal and discussing the application of Rule 53, Ala. R. Civ. P., and the fact that the merger of law and equity did not prevent application of the long-recognized rule that equity judgments may be final despite leaving other matters for later determination).
The March 2011 judgment determined the issues that were before the trial court: did Oxmoor and HCI cause water to trespass onto Lot 35, did a nuisance exist, who created it, are damages due, and who should abate the nuisance. The trial court determined that Oxmoor and HCI were not responsible for causing water to trespass onto Lot 35. The trial court also determined that Antoine and Glenn had created a nuisance by obstructing the flow of surface water across Lot 35, that Oxm-oor was due damages for the nuisance, and that Antoine and Glenn should be responsible for building a drain way to drain the surface waters across Lot 35. Under the March 2011 judgment, the only issue left for further determination is the exact plan for the drain way to abate the nuisance, a matter the trial court desired the parties to determine or, if agreement was not possible, an arbitrator to decide. Thus, we conclude that the March 2011 judgment is a final judgment capable of supporting an appeal.
We turn now to Antoine’s arguments regarding, the merits of the trial court’s March 2011 judgment. She argues that the trial court used an incorrect legal standard to evaluate surface-water rights, that it erred when it failed to award her damages for nuisance, that it erred when it failed to award her damages for continuing trespass, and that the trial court erred when it ordered her to “make corrections” to her property and to allow water to flow over her property. She further complains that the trial court erred by ordering the parties to attend binding arbitration to determine the proper manner in which to build the drain way. Finally, she argues that the trial court erred in failing to hold a hearing on her postjudgment motion.
Because it is the easiest of her arguments with which to dispense, we first address Antoine’s argument that the trial court erred by failing to hold a hearing on her postjudgment motion. Antoine did not request a hearing in her postjudgment motion. Our appellate courts have consistently held that the failure to request a hearing in a postjudgment motion waives the right to such a hearing under Rule 59(g), Ala. R. Civ. P. Greene v. Thompson, 554 So.2d 376, 381 (Ala.1989); Frederick v. Strickland, 386 So.2d 1150, 1152 (Ala.Civ.App.1980). Thus, the trial court committed no error in failing to hold a hearing on Antoine’s postjudgment motion.
We now turn to Antoine’s substantive argument concerning the law applicable -to surface-water rights. Antoine *1213 argues that the trial court improperly applied the “civil law rule” to determine that Antoine had obstructed the flow of surface water and to thus conclude that she owed damages to Oxmoor and that she should be required to construct a drain way to drain the surface water. Under the “civil law rule,” which governs surface waters on property in rural areas, “land is legally subservient to the natural flowage of surface water and the lower landowner may not disrupt the flow of [surface] water to the upper owner’s detriment.” City of Mountain Brook v. Beatty, 292 Ala. 398, 404, 295 So.2d 388, 392 (1974). However, in urban or developed areas, the “common law rule,” also known as the “common enemy rule,” governs the treatment of surface water by property owners. Beatty, 292 Ala. at 404, 295 So.2d at 392. Under the “common law rule,” “surface water is regarded as a common enemy, and every landowner has the right, as a general rule, to take any measures necessary for the protection of his own property.” Id.
Oxmoor and HCI argue that Antoine has presented the legal argument that the trial court applied the incorrect rule regarding surface water too late because she did not raise it until she filed her Rule 60(b) motion. Oxmoor and HCI rely on the principle of law permitting, but not requiring, a trial court to consider a legal argument raised for' the first time in a postjudgment or Rule 60(b) motion. See Diamond v. Aronov, 621 So.2d 263, 267 (Ala.1993); Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1369 (Ala.1988). Thus, they argue, the trial court did not abuse its discretion in failing to entertain Antoine’s new legal argument.
In fact, however, based on our review of the records in the both actions, Antoine never once made the argument to the trial court that the “common law rule” as opposed to the “civil law rule” regarding surface water should have been applied to this case.[7] Instead, Antoine argued in her Rule 60(b) motion that, because her property lies in a subdivision, the dispute regarding the surface water should have been governed by subdivision regulations. An appellate court cannot consider an argument asserted for the first time on appeal. Shiver v. Butler Cnty. Bd. of Educ., 797 So.2d 1086, 1088 (Ala.Civ.App.2000) (“Even if a particular issue is raised at the trial level, an appellate court may review that issue only on the theory on which it was tried and on which the judgment was rendered.”). Thus, we conclude that Antoine cannot now assert her legal argument that the trial court should have applied the “common law rule” regarding surface water to the dispute between her and Oxmoor and HCI.
Antoine next argues that the trial court erred in determining that she was not entitled to damages for the continuing trespass caused by the water from the ponding on the Oxmoor lots extending to the back of Lot 35. As Oxmoor and HCI point out, Antoine’s argument fails because the trial court determined that her actions, and not the actions of Oxmoor and HCI, created the ponding on the Oxmoor lots and the back of Lot 35. “Trespass requires an intentional act by the defendant.” Russell Corp. v. Sullivan, 790 So.2d 940, 945 (Ala.2001). That is, Antoine was required to prove that Oxmoor or HCI “intentionally eause[d] some ‘substance’ or ‘thing’ to enter” upon Lot 35. Born v. *1214 Exxon Corp., 388 So.2d 933, 934 (Ala.1980). Because the trial court determined that Antoine’s actions had caused the ponding, it necessarily determined that neither Oxmoor nor HCI had intentionally caused the water to encroach on Lot 35. Accordingly, the trial court did not err by failing to award Antoine damages for trespass.[8]
Antoine further argues that the trial court erred by failing to award her damages for the nuisance caused by the ponding. Antoine’s nuisance argument suffers the same fate as her trespass argument. Regarding nuisance actions, our supreme court has explained:
“Ala.Code 1975, § 6-5-120, has been liberally interpreted to effect its broadly stated purpose (providing a remedy for ‘anything that works hurt, inconvenience or damage to another’). See McCraney v. City of Leeds, 239 Ala. 143, 194 So. 151 (1940); and Baldwin v. McClendon, 292 Ala. 43, 288 So.2d 761 (1974). We also agree that ‘anything* (i.e., a nuisance, public or private) may consist of conduct that is intentional, unintentional, or negligent. Indeed, it may even consist of activities that- are conducted in an otherwise lawful and careful manner, as well as conduct that combines with the culpable act of another, so long as it works hurt, inconvenience, or damage to the complaining party. Restatement (Second) of Torts § 821B (1979). See, also, Alabama Power Co. v. Stringfellow, 228 Ala. 422, 153 So. 629 (1934).
“This does not mean, however, that the plaintiff is not required to prove against the defendant the elements of legal duty and causal relation between the conduct or activity complained of and the hurt, inconvenience, or damage sued for. That which works hurt to another, to satisfy the statutory definition of a nuisance, must comport with the classical tort concepts of duty and causation. See Lauderdale County Board of Education v. Alexander, 269 Ala. 79, 110 So.2d 911 (1959) (holding that the statutory definition of nuisance is declaratory of the common law and does not supersede the common law as to the other conditions and circumstances constituting a nuisance under the common law). Thus, we must look to the particular facts of each case to determine whether the party charged with creating and maintaining a nuisance has engaged in a course of conduct, or has permitted to exist a set of circumstances, that, in its natural and foreseeable consequences, proximately caused the hurt, inconvenience, or damage complained about.”
Tipler v. McKenzie Tank Lines, 547 So.2d 438, 440-41 (Ala.1989) (emphasis added). The trial court determined that Antoine’s actions caused the ponding on the Oxmoor lots and, necessarily, concluded that Oxm-oor and HCI were not responsible for the ponding. Thus, the trial court did not err in failing to award damages to Antoine on her nuisance claim.
Antoine’s argument that the trial court erred in ordering her to “make corrections” to her property and in requiring her to allow water to flow over her property is based, in large part, on Antoine’s argument that the “common law rule” as opposed to the “civil law rule” governing surface water applies to the present case. *1215 Because we have determined that we cannot consider that argument on appeal, we cannot reverse the trial court’s judgment ordering that Antoine construct a drain way on her property based on that argument. Antoine, however, makes an additional argument in support of reversal of the trial court’s order that she construct a drain way on her property.
Antoine also argues that, even if she caused the ponding, the trial court could only award damages and was not permitted to award Oxmoor and HCI in-junctive relief. She relies on King v. Adams, 349 So.2d 611, 615 (Ala.Civ.App. 1977), in which this court reversed a trial court’s judgment ordering an upper landowner to reconstruct and maintain ponds on his property to prevent drainage of water onto the lower landowner’s property. This court based its conclusion that an injunction requiring the upper landowner to restore the status quo was not legally permissible in King on the right of the “upper landowner ... to interfere with the flow of surface water for the purpose of improving his or her property.” King, 349 So.2d at 615. As noted above, the trial court concluded that a natural drain way existed on Antoine’s property, i.e., that she was the lower landowner, and that she had altered the topography of her lot, so King is factually inapposite. In addition, we cannot agree that King stands for the proposition that an injunction requiring that the flow of surface water be restored is never a permissible remedy. In fact, our supreme court has affirmed a judgment requiring lower landowners to remove a portion of a wall constructed on their property in order to allow the flow of surface water across their property. Dekle v. Vann, 279 Ala. 153, 158, 182 So.2d 885, 889 (1966). We therefore affirm the trial court’s judgment insofar as it orders Antoine to create a drain way -across her property for surface water.
Finally, we consider Antoine’s argument that the trial court erred by ordering the parties to attend binding arbitration if Oxmoor and HCI would not agree to her proposal concerning the construction of the drain way. “ ‘ “ [Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.” ’ ” Central Reserve Life Ins. Co. v. Fox, 869 So.2d 1124, 1127 (Ala.2003) (quoting AT & T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), quoting in turn United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). No contract requiring Antoine to arbitrate exists. The trial court erred in requiring the parties to submit to binding arbitration.
However, as Oxmoor and HCI point out, under Rule 53, Ala. R. Civ. P., the trial' court is permitted to refer certain issues to a special master when those issues are particularly complicated or when other exceptional circumstances exist. See Ex parte Alabama State Pers. Bd., 54 So.3d 886, 892-93 (Ala.2010) (stating that “those matters to be tried without a jury are to be referred to a special master only upon finding of ‘some exceptional condition’ requiring such referral, unless a claim requires an accounting or a difficult computation of damages”). Because it is apparent that the trial court has recognized that it will not be able to discern whether any given plan for the ordered drain way would meet sound engineering principles or would serve the purpose for which it was ordered, we conclude that the trial court’s referral to binding arbitration was intended to serve the same purpose as a reference to a special master, who *1216 would possess the ability to discern the feasibility of proposed plans and also be able to aid the parties in designing an appropriate drain way. Accordingly, we reverse the trial court’s judgment insofar as it refers the parties to binding arbitration and remand the cause to the trial court for it to amend its judgment to refer the parties to a special master in accordance with Rule 53.

The Rule 60(b) Appeal

As noted above, Antoine filed a Rule 60(b) motion directed to the March 2011 judgment. She relies on Rule 60(b)(1), (2), (3) and (6) in her motion for relief from the judgment. Rule 60(b) reads, in pertinent part:
“On motion and upon such terms as are just, the court may relieve a party or a party’s legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the. judgment.”
In her motion, Antoine argued that she had newly discovered evidence and that her failure to present certain evidence at trial was due to mistake, inadvertence, or excusable neglect. Antoine presented evidence regarding the price paid for certain subdivision lots sold after trial to prove that Oxmoor’s lots had not depreciated in value. She also presented evidence, which she had also submitted with her post-judgment motion, indicating that the pond-ing in the area surrounding the Oxmoor lots was historic and not a recent phenomenon. Antoine also alleged that Oxmoor and HCI had committed intrinsic and extrinsic fraud when they claimed that a natural drain way existed through Lot 35 when the certified subdivision plat did not denote a drainage easement or natural drain way. She further challenged the topographic, maps admitted into evidence by Oxmoor and HCI because, she alleged, they were either not properly certified or had failed to contain allegedly required information.
Antoine later supplemented her Rule 60(b) motion, arguing that the trial court relied on the incorrect law in that it considered Dekle v. Vann, 284 Ala. 142, 223 So.2d 30 (1969), instead of the subdivision regulations that, according to Antoine, should govern surface-water rights within the subdivision. She also argued that Lot 35 was the upper lot and that Oxmoor and HCI had failed to adduce evidence supporting the trial court’s conclusion that Lot 35 was the lower lot and that she had raised its elevation. Further, Antoine argued that her evidence showed that the trees in the area are, in fact, trees that typically grow in swampy areas. This evidence, she contended, proved that the area was historically a swamp. Finally, she argued that, because the ponding was mostly contained to the Oxmoor lots, Oxm-oor should be responsible for correcting the condition of its lots to alleviate the nuisance and the trespass to her property caused by the encroachment of the water onto the back part of Lot 35.
Our review of a Rule 60(b) motion, in most circumstances, is limited. We review only the ruling on the motion, and we consider only whether the trial court *1217 abused its discretion in granting or denying the motion. Murphy v. Golden Poultry Co., 634 So.2d 1027, 1029 (Ala.Civ.App.1994). Antoine argues that our review of the trial court’s denial of her motion should be de novo. She relies on the principle that issues of law brought before a trial court in a Rule 60(b) motion are reviewed under a de novo standard, and she cites in support of her argument Nationwide Mutual Fire Insurance Co. v. Austin, 34 So.3d 1238, 1241-42 (Ala.2009).
Although in Austin our supreme court did utilize a de novo standard of review when reviewing the denial of a Rule 60(b)(5) motion arguing that the underlying judgment had been satisfied in part by payments made by the movant, Antoine reads Austin far too broadly. The trial court’s review of whether a judgment has been satisfied in part, much like the issue whether a judgment is void in a Rule 60(b)(4) motion, is purely legal. Nothing in the issue addressed in Austin required “ ‘a discretionary appraisal or weighing by the [trial] court of the facts of a particular case.’ ” Austin, 34 So.3d at 1242 (quoting In re Marriage of Barnes, 251 Mont. 334, 336, 825 P.2d 201, 203 (1992)). However, in the present case, the arguments in Antoine’s Rule 60(b) motion concern whether she failed to present evidence due to mistake, inadvertence, or excusable neglect; whether she has newly discovered evidence to present; whether certain maps in evidence were properly certified; and whether Oxmoor and HCI committed fraud by presenting evidence indicating that a natural drain way crossed Lot 35. Those issues, unlike determining whether payments partially satisfied a judgment, do not present pure questions of law. In addition, although Antoine argued in her motion that the trial court applied the wrong law, an argument that the trial court misapprehended the law or misapplied it to the facts is not encompassed in any ground for relief under Rule 60(b). City of Birmingham v. City of Fairfield, 396 So.2d 692, 695-96 (Ala.1981); Rhodes v. Fulmer, 12 So.3d 1239, 1244 (Ala.Civ. App.2009) (“[A] charge[ ] that the circuit court made an error of law in its judgment ... is the type of contention that must be raised either in a timely Rule 59(e) motion or in a timely appeal from the judgment.”). Accordingly, we will review the trial court’s denial of Antoine’s Rule 60(b) motion under the abuse-of-discretion standard.
Antoine argues first that “any evidence which was available at the time of trial or within 30 days after the judgment but was [not] presented at that time was due to mistake, inadvertence, or excusable neglect,” which, she contends, entitles her to relief under Rule 60(b)(1). She cites no authority for the proposition that the failure of a pro se litigant to present evidence at trial may form a basis for relief from a judgment under Rule 60(b). The fact that Antoine appeared pro se at trial and therefore failed to present evidence that was available to her at the time of trial does not give rise to a basis for relief from the judgment, and the trial court did not abuse its 'discretion in denying Antoine’s motion insofar as it was based on Rule 60(b)(1). See Ex parte Branson Mach., LLC, 78 So.3d 950, 955 (Ala.2011) (holding that the fact that a pro se litigant had failed to file a letter intended to serve as an answer was not a basis for relief under Rule 60(b)(1)); Ex parte Spriggs Enters., 879 So.2d 587, 591-92 (Ala.Civ.App.2003) (holding that failure of pro se litigant to apprise the court before entry of judgment that she had previously responded to discovery requests was not a sufficient basis for relief under Rule 60(b)(6) when pro se litigant had not apprised the court of that fact when opposing counsel moved to compel responses to discovery or when the trial court dismissed the action as a discovery sanction).
*1218 According to Antoine, she was also entitled to relief from the March 2011 judgment on the basis of newly discovered evidence. She presented the following evidence to the trial court in support of her right to relief from the March 2011 judgment under Rule 60(b)(2): the subdivision plat, deeds to neighboring property sold in January 2011 and June 2011, a document entitled the “Tree Stand Description for Swamp Area Report” (“the Tree Report”) created on March 30, 2011, and the Jefferson County Tax Assessor Parcel Viewer for Oxmoor (“the Parcel Viewer”) created after tornadoes struck the area in April 2011. Antoine admits that she mentioned the subdivision plat in her testimony, and she presents no argument that the plat, which clearly existed at the time of trial, could not have been presented as evidence at trial. Moody v. State ex rel. Payne, 344 So.2d 160, 163 (Ala.1977) (“[F]or a litigant to obtain a new trial on the ground of newly discovered evidence, it must appear that his reasonable diligence before trial would not have revealed this evidence which he failed to discover.”). Furthermore, the deeds, the Tree Report, and the Parcel Viewer admittedly came into existence after the trial, and they are therefore “new” and not “newly discovered” evidence; as such, they do not entitle Antoine to relief under Rule 60(b)(2). Moody, 344 So.2d at 163 (“There can be no Rule 60(b)(2) relief for evidence which has come into existence after the trial is over simply because such a procedure would allow all trials perpetual life. ‘Newly discovered evidence’ means evidence in existence at the time of trial of which the movant was unaware.”). The trial court therefore properly denied Antoine’s motion for relief from judgment on the ground of newly discovered evidence.
Antoine next argues that the subdivision plat, which we have determined was not newly discovered evidence, fails to indicate that a drainage easement or natural drain way exists on Lot 35. She contends that the subdivision plat is required by law to note drainage easements and “any portion of the land of the proposed subdivision ... subject to inundation by storm sewers or overflow or ponding of local storm water.” According to Antoine, the failure of the subdivision plat to contain the allegedly required notations supports the conclusion that Oxmoor and HCI committed fraud when they presented testimony and evidence that a natural drain way existed on Lot 35 before Antoine leveled the lot to build her house. Even if the subdivision plat failed to properly note the drain way on Antoine’s property, the trial court properly denied Antoine relief from the March 2011 judgment because the trial court was free to decline to rely on the subdivision plat because the plat was not newly discovered evidence. Bon Harbor, LLC v. United Bank, 53 So.3d 82, 94 (Ala.2010) (stating that trial court did not err in declining to consider a motion based on alleged newly discovered evidence when trial court could have determined that the evidence was not newly discovered and therefore should not be considered). Without the subdivision plat as evidence, Antoine had nothing to support her argument that Oxmoor and HCI had presented fraudulent testimony and evidence concerning the drain way. Accordingly, the trial court did not abuse its discretion in denying Antoine’s Rule 60(b) motion insofar as it was based on this ground.
Finally, Antoine argued in her Rule 60(b) motion that the topographic maps entered into evidence by Oxmoor and HCI failed to comply in several respects with the Standards of Practice for Surveying in the State of Alabama (“the surveying standards”). Based on this allegation, Antoine argues that Oxmoor and HCI presented fraudulent evidence to the court and that she is thus entitled to relief under Rule 60(b)(3).
*1219 “One who contends that an adverse party has obtained a verdict through fraud, misrepresentation, or other misconduct (Rule 60(b)(8)) must prove by ‘clear and convincing evidence (1) that the adverse party engaged in fraud or other misconduct and (2) that this misconduct prevented the moving party from fully and fairly presenting his case. [Citation omitted.] The resolution of these two issues is within the trial court’s discretion, and on review, our only inquiry is whether the trial court abused its discretion.’ ”
Pacifico v. Jackson, 562 So.2d 174, 179 (Ala.1990) (quoting Montgomery v. Hall, 592 F.2d 278, 279 (5th Cir.1979)). The Pacifico court relied on the reasoning for requiring clear and convincing evidence in such situations expressed by the United States Supreme Court:
“ ‘That the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are after-wards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases.’ ”
United States v. Throckmorton, 98 U.S. 61, 68-69, 25 L.Ed. 93 (1878); see also Pacifico, 562 So.2d at 179.
Assuming that the surveying standards apply to the topographic maps entered into evidence and that those maps violate the surveying standards,[9] we are not convinced that the trial court abused its discretion in denying Antoine relief under Rule 60(b)(3). The trial court is given much discretion in determining whether a party has “engaged in fraud or other misconduct” such that relief under Rule 60(b)(3) is warranted. Pacifico, 562 So.2d at 179. The trial court must have concluded, and we cannot disagree, that Antoine did not clearly and convincingly prove that Oxmoor and HCI “engaged in fraud or other misconduct” by introducing the topographic maps into evidence. Thus, we cannot conclude that the trial court erred in denying Antoine’s Rule 60(b)(3) motion insofar as it was based on this ground.

Conclusion

We have determined that the trial court erred in referring the parties to binding arbitration in the March 2011 judgment, and, therefore, that judgment is reversed and the cause is remanded with instructions that the trial court amend the March 2011 judgment to refer the parties to a special master under Rule 53. In all other respects, the March 2011 judgment is affirmed. The October 2011 judgment denying Antoine’s Rule 60(b) motion is also affirmed.
2100839 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
2110139 — AFFIRMED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. We note that HCI asserted no counterclaims against Antoine and Glenn. However, no party challenges this aspect of the trial court’s judgment.

 Antoine purported to seek postjudgment review on Glenn’s behalf, as well as on her own behalf; however, only Antoine signed the postjudgment motion. Because Antoine is not an attorney, she was not permitted to represent Glenn's interests in court or to file the postjudgment motion on his behalf. Beasley v. Poole, 63 So.3d 647, 649-50 (Ala.Civ.App.2010). Oxmoor and HCI moved to strike Antoine’s postjudgment motion insofar as Antoine purported to act on Glenn’s behalf, and the trial court properly struck the motion insofar as it was filed on Glenn’s behalf.

. Oxmoor and HCI filed a cross-appeal, which they have since withdrawn.

. Antoine later filed a suggestion of death in this court in the nuisance appeal. Based on statements made in the hearing on the Rule 60(b) motion, it appears that no estate was opened for Glenn. Because, according to the statements made at the Rule 60(b) hearing, Lot 35 was owned jointly with a right of survivorship, Antoine is now the sole owner of the property and thus is the only appellant in the nuisance appeal.

. Johnson failed to appear or participate at trial. It has also failed to file a brief with this court.

. At the conclusion of her argument that the trial court’s failure to address the claims against Johnson prevents the March 2011 judgment from being final, Antoine makes a one-paragraph argument that the trial court erred in not entering a judgment against Johnson for its failure to appear or defend at trial. Antoine cites no authority for this argument, and, therefore, we decline to address it. Rule 28, Ala. R.App. P.; White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008) ("Rule 28(a)(10) requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do hot, the arguments are waived.”).

. Oxmoor and HCI, in their response to Antoine’s Rule 60(b) motion, did discuss, in general terms, the "common law rule” and the "civil law rule” regarding surface water. The hearing on the Rule 60(b) motion contains no reference to the rules governing surface water.

. At the conclusion of her argument on her trespass claim, Antoine states that the trial court erred in not awarding her damages for injury to real property under Ala.Code 1975, § 6-5-210. Antoine makes no argument concerning the elements of a cause of action under § 6-5-210, and we therefore do not consider her “argument" further. Rule 28; White Sands Group, 998 So.2d at 1058.

. We question whether topographic maps created by the United States Geological Survey or another federal agency would be required to meet the surveying standards used in Alabama for, among other things, boundary-line surveys. Because it is not necessary for us to decide whether the surveying standards are applicable to the topographic maps in evidence in order to resolve the issue on appeal, we will simply assume that they are applicable for purposes of this opinion.